## TAYLOR v. BOWLES, Price Administrator.
### No. 81.

United States Emergency Court of Appeals.
Heard at San Francisco Sept. 2, 1944.

Decided Nov. 27, 1944.

Stanley W. Taylor, pro se.

Ben C. Duniway, Atty., of San Francisco, Cal. (Richard H. Field, General Counsel, Nathaniel L. Nathanson, Associate General Counsel, and Warren L. Sharfman, Chief, Court Review Rent Branch, all of Washington, D. C., Robert T. Mack, of Chicago, Ill., and Maurice Alexandre and Adelyn Disler, both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MAGRUDER, Judge.

Since 1941 Stanley W. Taylor has been the owner and operator of an apartment building in San Francisco, California, with about fifty apartments rented to tenants on a month-to-month basis. As such, he became subject to Maximum Rent Regulation No. 28 for the San Francisco Bay Defense-Rental Area, effective July 1, 1942.[1] For housing accommodations rented on March 1, 1942, the regulation, as a general rule, fixes the rent prevailing on that date as the maximum legal rent.

On December 8, 1942, Taylor filed with the Area Rent Director a petition asking for a certificate authorizing him to proceed with the eviction of his tenants in accordance with the remedies and procedure prescribed by local law. This petition was filed in compliance with Section 1388.1806 (b) of the regulation which provided: "No tenant shall be removed or evicted on grounds other than those stated above unless, on petition of the landlord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The Administrator shall so certify if the landlord establishes that removals or evictions of the character proposed are not inconsistent with the purposes of the Act or this Maximum Rent Regulation and would not be likely to result in the circumvention or evasion thereof."[2]

By order dated January 21, 1943, the Acting Area Rent Director dismissed this petition for an eviction certificate. Thereafter, on March 10, 1943, Taylor filed with the Regional Administrator a protest against said order of January 21, 1943. The Regional Administrator granted Taylor's request for an oral hearing on the protest, and designated William B. Lockhart to conduct the hearing as presiding officer. The hearing was held on March 18 and 22, 1943. Taylor testified at length as to his reasons for desiring to withdraw the apartment house from the rental market. On April 22, 1943, the presiding officer filed his report, which, after making elaborate findings of fact, recommended that the protest be denied. On the same day, by order of the Regional Administrator, the report of the presiding officer was incorporated into the record, and protestant was given fifteen days in which to file objections to the report. Such objections were filed and oral argument was held thereon before the Regional Administrator on July 2, 1943.

The Regional Administrator denied Taylor's protest by order entered August 3, 1943. Following that, on August 30, 1943, Taylor filed the present complaint in this court.

---

[1] 7 F.R. 4913. This regulation was later combined with other maximum rent regulations and designated Rent Regulation for Housing. 8 F.R. 7322.

[2] Under Procedural Regulation No. 3, petitions for eviction certificates are filed with the Area Rent Director.

The complaint set forth three separate "causes of action", but in his brief and at the oral argument before us, Taylor has not pressed the second and third. He has asked that we confine our consideration to the first cause of action, relating to the denial of his petition for an eviction certificate.

After the complaint was filed, much time was consumed by the Administrator and by this court in an endeavor to get the transcript in shape satisfactory to complainant, who, we think, has raised unnecessary difficulties in this connection. Neither the Administrator nor this court has been lacking in diligence in bringing this complaint to hearing.

Section 4(d) of the Emergency Price Control Act provides (56 Stat. 28, 50 U.S.C.A.Appendix § 904(d): "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent." Perhaps this prohibition was included in the Act to avoid possible constitutional difficulties. See Bowles v. Willingham, 1944, 321 U.S. 503, 517, 64 S.Ct. 641; Yakus v. United States, 1944, 321 U.S. 414, 431, 437, 438, 64 S.Ct. 660; Wilson v. Brown, 1943, Em.App., 137 F.2d 348, 351, 352.

However, the rent regulation from its first issuance has contained restrictions on eviction in the interest of affording tenants a measure of security. See Section 1388.-1806, 7 F.R. 4915. A tenant could not be evicted merely because his lease had expired and the landlord wanted to put in a new tenant. Obviously, effective enforcement of rent ceilings is dependent upon the general co-operation of tenants. A tenant in the face of a threat of eviction during a period of housing shortage would be under great pressure to acquiesce in some disguised or roundabout arrangement devised by the landlord to circumvent or evade the rent ceiling. And if a tenant who refused to pay more than the maximum rent were subject to eviction, the landlord might readily find, among pressing applicants for housing accommodations, someone who would agree to a surreptitious violation of the regulation. Accordingly, except in a few specified situations, it is provided that the landlord must first obtain authorization from the Office of Price Administration before proceeding to evict a tenant. Originally, one of the situations in which eviction was permitted without prior administrative authorization was where "the landlord seeks in good faith not to offer the housing accommodations for rent". Evidently this worked out unsatisfactorily, for a tenant, served with such an eviction notice, would not know whether he was obliged to comply with it or not, in the absence of a conclusive determination of fact as to whether the landlord had the bona fide intention of withdrawing the accommodations from the rental market. The regulation was therefore amended, effective October 20, 1942, by Supplementary Amendment No. 7 (7 F.R. 8505), so that a landlord wishing to withdraw his housing accommodations from the market could no longer proceed to evict his tenants without prior authorization by the Office of Price Administration. But the regulation as so amended does not conflict with Section 4(d) of the Act, for such a landlord upon a proper showing may obtain an eviction certificate from the Area Rent Director.

In Taylor v. Brown, 1943, Em.App., 137 F.2d 654, 662, 663, certiorari denied 1943, 320 U.S. 787, 64 S.Ct. 194, we said that the provisions of the regulation restricting the eviction of tenants are authorized by Section 2(d) of the Act "and we think that they are appropriate to effective rent regulation and are not unreasonable." Section 2(d), 50 U.S.C.A.Appendix § 902(d), provides that whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of the Act, "he may, by regulation or order, regulate or prohibit * * * speculative or manipulative practices or renting or leasing practices (including practices relating to recovery of the possession) in connection with any defense-area housing accommodations, which in his judgment are equivalent to or are likely to result in * * * rent increases * * * inconsistent with the purposes of this Act." A similar authority is given in general terms in Section 2(g) of the Act, which provides that regulations "may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof."

We now come more particularly to the facts of the present case. Since rent control was first imposed in the San Francisco area, Taylor has been engaged in a running fight with the Office of Price Administration. The colorful details need not be stated. Some indication of Taylor's attitude may be gleaned from a re-

mark of his, quoted in the record, that the apartment "would be a gold mine if we were allowed to operate without OPA." In an earlier protest, Taylor made a broadside attack upon the constitutionality of the statute and the validity of most of the provisions in the regulation. This came before us in Taylor v. Brown, 1943, Em.App., 137 F.2d 654, and we dismissed Taylor's complaint. Certiorari was denied in 1943, 320 U.S. 787, 64 S.Ct. 194. Meanwhile, criminal proceedings were brought against Taylor for various violations of the regulation. Taylor was convicted and sentenced to a fine and six months' imprisonment. His conviction was upheld in the Circuit Court of Appeals in Taylor v. United States, 1944, 9 Cir., 142 F.2d 808, certiorari denied 65 S.Ct. 56. In addition to that, the United States District Court for the Northern District of California, at the suit of the Price Administrator, issued temporary and permanent injunctions restraining Taylor from further violations of the regulation. Taylor has twice been held in contempt of court for violations of these injunctions.

After failing in various efforts to obtain an increase in his rents, Taylor filed the petition for an eviction certificate, the denial of which is the foundation of the present proceedings before us.

The findings of fact, incorporated in the Regional Administrator's opinion accompanying his order denying the protest, cover at some length Taylor's purposes in seeking to withdraw the apartment house from the rental market; and "on the basis of those findings" the Regional Administrator concluded that the Area Rent Director properly refused an eviction certificate and that the protest should be denied. The gist of the findings is found in the following:

"Protestant's primary desire and intention is to rerent the apartment house after a temporary period of vacancy. This intention is based upon his belief that he will be successful in his court appeals or successful in bringing about a change in the Regulations or a change in the interpretations of the Regulations or in securing special dispensation in his case so that he can rent the apartments for more than the present maximum rents. * * *

"His secondary intention, if he is unsuccessful in securing authority to charge higher rents, is to sell the accommodations for housing use by selling individual apartments."

In other words, Taylor satisfied the Regional Administrator that he preferred to leave the apartments vacant rather than to continue renting them at the existing ceilings and that if, after the lapse of a temporary period, he did not succeed in securing an upward revision of the ceilings, he intended to dispose of the apartment house. At the oral argument, counsel for the Administrator contended that the evidence in the record, particularly as to Taylor's past conduct, "would justify a conclusion by the Regional Administrator that the real purpose of this eviction was to get tenants into that building who would be complacent in going through with another evasionary scheme." But the Regional Administrator made no such finding; indeed, the findings that he did make are inconsistent with the supposition that the contemplated eviction was merely another maneuver by Taylor to accomplish further violations of the regulation.

These subsidiary findings do not support the concluding findings as follows:

"We find that to grant a certificate of eviction in this case would be inconsistent with the purposes of the Emergency Price Control Act of 1942 and the Maximum Rent Regulations Nos. 28 and 32A, and would be likely to result in a circumvention or evasion thereof.

"We find that protestant does not intend in good faith to withdraw the housing accommodations at 530 Larkin Street from the rental market for housing purposes, but that, on the contrary, he intends to continue to offer such accommodations for rent for housing purposes."

The legal position taken by the Regional Administrator seems to be that, under Section 4(d) of the Act, the Administrator is not required to permit withdrawal of the housing accommodations from the rental market, unless the landlord intends permanently and unconditionally to cease his rental operations. Section 4(d) cannot be read so narrowly. Just as the owner of a commodity can withhold it from sale for the time being, hoping that the ceiling price will later be raised, so a landlord may withhold his housing accommodations from the rental market because of dissatisfaction with the existing maximum rents. It is quite true that the rent control program would be jeopardized if landlords

836

generally went on such a strike. But Congress, in affording this leeway to an occasional obstinate landlord who resents government interference with what would, in an unregulated market, be a "gold mine", has evidently concluded, with good reason, that the eventuality of such a general strike is not to be anticipated, particularly where the rent regulation is "generally fair and equitable".

However cantankerous or reprehensible Taylor's past conduct may have been, however much it may be to his own immediate pecuniary disadvantage to forego rental income during the period he is engaged in an effort to get the rent ceilings raised and before he can perfect arrangements for some other use or disposition of the premises, the Act does not compel him to continue renting the apartments at the existing level of maximum rents. Since Section 4(d) of the Act permits him thus to withdraw the apartment house from the rental market, it necessarily follows that to grant him the certificate of eviction, on the basis of the facts found by the Regional Administrator, would not be inconsistent with the purposes of the Act.

The order of the Area Rent Director dated January 21, 1943, denying Taylor's petition for an eviction certificate, and the order of the Regional Administrator dated August 3, 1943, denying Taylor's protest, are both set aside; and the case is remanded to the Administrator for further proceedings in conformity with this opinion.