ALFONSO LATONI, Petitioner and Appellee, *v.* MUNICIPAL COURT OF SAN JUAN, Respondent; CRUZ RODRÍGUEZ ROSARIO, Intervener and Appellant.

No. 9447. Argued March 14, 1947.—Decided April 8, 1947.

*David Curet Cuevas* for appellant.  *Carlos D. Vázquez* for appellee.
*Luis Negrón Fernández*, Acting Attorney General, *A. Torres*

*Braschi, Deputy Attorney General,* and *Manuel Ledesma Dávila* attorney for the Price Administrator of Puerto Rico, filed a brief in the case.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The question here is whether an insular statute, which imposes restrictions on eviction of tenants by their landlords in addition to those provided under the Federal Emergency Price Control Act, violates a provision of the latter which prohibits State or local rent control.

In 1945 Rodríguez purchased a house and notified Latoni, who was occupying the house under an oral month-to-month lease, to vacate the house but Latoni failed to comply. Rodríguez satisfied the Federal Office of Price Administration that he needed the house to live in himself and pursuant to its Regulations obtained a certificate which authorized him to file suit to evict Latoni after six months from the date of the certificate. After taking all the steps required by the Federal Regulations, on March 26, 1946 Rodríguez filed this unlawful detainer proceeding in the municipal court against Latoni.

On April 18, 1946 the parties filed a stipulation in the municipal court in which the defendant admitted the allegations of the complaint, consented to judgment against him, and waived the right of appeal so that the judgment would be final immediately. However, the parties agreed in the stipulation that the judgment would not be executed until September 30, 1946, and that meanwhile the same monthly rent would be paid. On May 3, 1946, the municipal court entered judgment for the plaintiff in accordance with the stipulation.

On September 17, 1946, the tenant filed a motion in the municipal court asking for suspension of the proceedings on the ground that this was required by § 12 of Act No. 464, Laws of Puerto Rico, 1946 (p. 1326). The municipal court refused this motion. On certiorari, the district court entered

an order setting aside (1) the order refusing the motion of the tenant and (2) the judgment of the municipal court of May 3, 1946, for the plaintiff insofar as execution thereof was concerned. The landlord appealed from the order of the district court.

Congress in § 2(b) and (d) of the Emergency Price Control Act of 1942 authorized the Administrator (1) to fix maximum rents for housing accommodations and (2) to restrict or prohibit eviction practices likely to result in rent increases. 50 U.S.C.A., App., § 902(b), (d). Congress provided for restrictions of evictions along with maximum rents because it recognized that rent ceilings would be effective only if occupancy were also controlled. If "a tenant who refused to pay more than the maximum rent were subject to eviction, the landlord might readily find, among pressing applicants for housing accommodations, someone who would agree to a surreptitious violation of the [maximum rent] regulation." *Taylor* v. *Bowles*, 145 F.(2d) 833, 834 (E.C.A., 1944).

The Federal Administrator established maximum rents and restrictions of evictions in Puerto Rico. Regulation 6(a) provides that the landlord may not oust a tenant unless (1) he refuses to renew a lease; (2) he unreasonably refuses access to the landlord; (3) he violates an obligation of his tenancy or commits a nuisance; (4) he sublets under certain circumstances; (5) [Revoked]; and (6) the landlord needs the property to live in it himself. These regulations restricting evictions have been upheld as "appropriate to effective rent regulation". *Taylor* v. *Brown,* 137 F.(2) 654, 662-3, (E.C.A., 1943), cert. denied, 320 U. S. 787; see also *Taylor* v. *Bowles, supra.*

Congress permitted the Act to lapse on June 30, 1946, but after a hiatus of twenty-five days on July 25, 1946, passed an Act extending its effective period until June 30, 1947. The Senate version of this Price Control Extension Act of 1946 went to conference providing for discontinuance of

134

Federal rent control in any State prepared to operate under its own rent control law. The conferees not only eliminated this provision, but they went to the other extreme. The Act had never previously prohibited local rent control. But the conferees inserted such a provision and it was enacted. Cong. Rec., July 22, 23, 24, 1946; pp. 9777, 87; 9895, 9905-6; 10001, respectively. The last paragraph of § 2(b), 50 U.S.C.A., App., § 902, therefore now provides that "While maximum rents are in effect under this Act with respect to housing accommodations in any defense-rental area, such housing accommodations shall not be subject to rent control by any State or local government."

When questioned as to the reason for this change, Senator Barkley, one of the conferees, said on the Senate floor that "it was the general feeling that even in States which had temporarily undertaken to take over during the hiatus, on the theory that a Federal law might not be enacted, it was the feeling and information of the conferees that the States and communities really preferred the National Government to handle this matter from now on during the remainder of the year, until the time of the expiration of the law. At any rate, only four States had acted to undertake to control rents within their boundaries. Under all the circumstances the conferees felt that it was better for the next year to pursue the course we had pursued during rent control, and allow it to be *exclusively a Federal function.*" (Cong. Rec., July 24, 1946, 10001; italics ours). The managers for the House reported that "One effect of this provision is to make it clear that in any case where, since June 30, 1946, any State has put its own rent control law into operation, the rent provisions of the Price Control Act and the orders and regulations thereunder, within the field of their operation, will supersede such State law." (Cong. Rec., July 22, 1946, 9787).

Act No. 464, Laws of Puerto Rico, 1946, known as "The Reasonable Rents Act", was approved on April 25, 1946.

Our Legislature envisioned the possibility that Congress might permit the Federal Act to lapse on June 30, 1946. It therefore enacted a full-dress rent control Act. It provided in §§ 3 and 6 for the fixing of maximum rents under insular law for housing accommodations; and it further provided that the Act shall take effect only if so ordered by the Executive Council. When the Federal Act expired on June 30, 1946, the Executive Council rushed into the breach and put Act No. 464 into effect for housing accommodations on July 1.

However, Congress renewed the Federal Act after an interim period of twenty-five days. Moreover, Congress for the first time inserted a provision in the Extension Act of 1946 prohibiting a local rent control law. It is therefore conceded that the maximum rent provisions of Act No. 464 for housing accommodations are inoperative while maximum rents are provided in Puerto Rico under the Federal Act.

This is conceded despite the provision of § 4 of our Act that while the Federal Act is in effect in Puerto Rico, housing accommodations shall be subject to its terms, but that such properties shall also "be subject to all such provisions of this Act as are not in conflict with the terms of the said Federal Act." When the insular Act was passed in April, the Legislature could not have known that the Federal Act, enacted in July, would include a new provision barring local rent control. It therefore apparently thought that Federal and local rent control could exist together here, if the Executive Council so ordered pursuant to § 27. But it is now recognized by all concerned that despite § 4 insular maximum rents cannot subsist alongside the Federal provisions therefor even if they do not "conflict" with the Federal provisions. This is because the Federal Act, passed subsequent to enactment of the insular Act, flatly prohibits all local rent controls, not simply "conflicting" ones.

Nevertheless, it is argued and the lower court held that § 4 does operate to keep § 12 of Act No. 464 in effect, notwithstanding the renewal of the Federal Act and the in-

hibition therein against any local rent control law. A detailed examination of § 12 is therefore in order.

Section 12 provides that no landlord may bring an unlawful detainer proceeding even if a lease has expired, and leases shall be understood to be renewed. If there was no written lease, "but a stipulation as to the amount to be paid for rent, the tenant shall have a right to occupy the property while he pays the basic rent or the reasonable rent fixed by the Administrator."

Section 12 then provides that "An action of unlawful detainer against tenants may be commenced only in the following cases:" (a) when the tenant fails to pay rent for one or more months; (b) when the tenant uses the rented property for illegal or immoral purposes without the knowledge of the landlord; (c) when the tenant sublets the property without the consent of the landlord; (d) when the landlord desires to obtain the property to demolish it in order to construct a new building; (e) when the tenant negligently or maliciously damages the property; "(f) when the landlord seeks in good faith to recover the possession of a dwelling not habitually used for rent . . . for the immediate and personal use by him as his place of residence, provided he has no other property in the same locality in which to establish his residence, and that he has lived in a rented house for at least one year prior to the filing of an action of unlawful detainer . . . ".

Section 12 goes on to provide that "after the effective date of this Act, every unlawful detainer proceeding which does not conform to the motives, conditions, and terms fixed in this Act, shall be stayed until the termination of the emergency herein declared."

We thus see that § 12 does not refer to maximum rentals. Instead, it amends the grounds for which an unlawful detainer proceeding will lie in this jurisdiction. In that respect it therefore covers the same area as the Administrator undertook to cover in his Regulations issued pursuant to § 2(d)

of the Federal Act. That is to say, both the Federal Regulations and § 12, although differing somewhat in detail, freeze occupancy by the tenant and restrict eviction proceedings except in certain specified instances.

The district court held that the inhibition in the Federal Act against a local rent control law is directed only against a local law which either (a) fixes maximum rents or (b) eliminates the requirement that a landlord must obtain a certificate of eviction from the Federal Administrator before he can pursue his remedy therefor under local law. But, according to the lower court, the prohibition in the Federal statute against a local rent law does not prevent our Legislature from modifying or suspending the local remedy for unlawful detainer.

The lower court accordingly concludes that § 12 is not a local rent control, but is merely the latest expression of our Legislature of the grounds for which the local remedy of unlawful detainer may be invoked; that it is presently in effect as such because it does not violate the Federal inhibition against a local rent control law; and therefore that this proceeding must be stayed in view of the provision of § 12 that all proceedings which do not comply with its terms are stayed for the duration of the present emergency.

The district court did not state in what specific way the present proceeding is violative of the conditions provided in § 12. But it seems apparent from the pleadings why the lower court stayed the proceedings under § 12. Here the landlord wished to obtain possession to live in the house himself. Accordingly, he obtained a certificate of eviction from the Federal Administrator which authorized him to proceed to oust the tenant pursuant to local law. But § 12(f) of the insular Act provides for a requirement in addition to those contained in the Federal Regulations for such a landlord: he must also show that the property he is seeking to recover has not been "habitually" rented. Since the landlord did not and could not allege that his property had not

138

been "habitually" rented, the district court ordered that this proceeding be stayed.

Decision of this case therefore turns on the question of whether the requirement which § 12(f) adds to the Federal regulation on the subject—a landlord seeking to recover a property in order to live in it himself can do so only if the property has not been "habitually" rented in the past—is violative of the prohibition in the Federal Extension Price Control Act of 1946 against a local rent control law.(¹)

The first significant point is the very language Congress used. It provided that while "maximum rents" are in effect under the Federal Act, there shall be no local "rent control" law. If Congress had meant to say that while Federal *maximum rents* are in effect, there shall be no local *maximum rent* legislation, it could have easily used this

---

¹ We put aside as unnecessary for decision in this case two questions: *First*, the provision of § 12(f) that a landlord who has "habitually" rented his property must continue to do so may be of doubtful constitutionality. Congress carefully provided the contrary in the Federal Act. It said in § 4(d): "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent." 50 U.S.C.A., App., § 904(d). Federal Regulation 6(a)(6), as we have seen, implements this disclaimer. The Emergency Court of Appeals therefore held that a landlord cannot be required to continue to rent his property; he may oust a tenant to live in the property himself or to leave it vacant. In so holding the court remarked that "Perhaps [§ 4(d)] . . . was included in the Act to avoid constitutional difficulties." *Taylor* v. *Bowles*, 145 F.(2) 833, 34 (E.C.A., 1944); *Taylor* v. *Porter*, 156 F. (2) 805, 810 (E.C.A., 1946). Cf. *Bowles* v. *Willingham*, 321 U. S. 503, 517; *Yakus* v. *United States*, 321 U. S. 414, 431, 437–38; *Wilson* v. *Brown*, 137 F.(2d) 348, 351–52 (E.C.A., 1943); *Block* v. *Hirsh*, 256 U. S. 135; *Marcus Brown Co.* v. *Feldman*, 256 U. S. 170; *Levy Leasing Co.* v. *Siegel*, 258 U. S. 242; *Miranda* v. *District Court*, 63 P.R.R. 155; *Ex parte Irizarry*, 66 P.R.R. 634; *Roig* v. *People of Puerto Rico*, 147 F.(2d) 87 (C.C.A. 1st, 1945).

*Second*, even if § 12(f) is constitutional, it may be invalid on the ground that it "conflicts" with a Federal Act on the same subject matter. See *Ballester Hermanos* v. *Court of Tax Appeals*, 66 P.R.R. 531, 547, footnote 17, and cases there cited. Such an argument would be predicated on the following: Congress provided that under certain circumstances there shall be *no* restrictions on evictions; namely, a landlord, even if he has been "habitually" renting his property need not continue to rent it if he chooses to withdraw the property from the rental market or to live in the property himself. § 4(d); *Taylor* v. *Bowles*, supra. Does § 12(f) "conflict" with this Federal law when it provides that such a landlord may not oust his tenant?

language. Instead it chose advisedly to use "rent control" as the inhibiting phrase when it knew that it had itself used the term "rent control" broadly to include not only fixing of maximum rents but also restriction of evictions.

We turn next to the discussion in the cases as to whether the power of the Administrator under the Federal Act to restrict evictions is a primary purpose of the Act or is only incidental to his power to prevent inflationary rent increases. The Emergency Court of Appeals held in *Parker* v. *Porter*, 154 F.(2) 830 (E.C.A., 1946), that a tenant was not "subject" to an order of the Administrator granting his landlord a certificate of eviction, and therefore was not entitled to review thereof by that court. In reaching this conclusion, the court stated that a tenant had no vested right to possession under the Act and that the power of the Administrator to restrict evictions was only incidental to his power to fix maximum rents. There was a strong dissent holding that the Act had both purposes—fixing of maximum rents and restriction of eviction. *Snyder* v. *Reshenk*, 38 A.(2) 803 (Conn. 1944), is in agreement with the dissent. And see 91 U. of Pa.L.Rev. 652; 16 So.Calif. L.Rev. 315.

On certiorari, the Supreme Court of the United States reversed the Emergency Court of Appeals. *Parker* v. *Fleming*, 329 U. S. 531, L.ed. 395. The Supreme Court stated that it was unnecessary to resolve the dispute as to whether the housing accommodation provisions of the Federal Act had one main and one incidental purpose or two main purposes. It asserted in effect that, however that may be, the restriction of evictions was an integral feature of the Federal law and that a tenant is substantially affected by an order granting his landlord a certificate of eviction. It therefore held that a tenant is "subject" to such an order and consequently is entitled to obtain review thereof in the Emergency Court of Appeals.

We likewise need not determine whether restriction of evictions is a purpose in itself or is incidental to the purpose

of fixing maximum rents. The importance of the *Parker* case for us is that even the majority opinion in the Emergency Court of Appeals recognized that, together with the fixing of maximum rents, restriction of evictions is an important part of "rent control."

There is another line of reasoning which leads us to conclude that anti-eviction provisions are encompassed by the term "rent control". Maximum rents could probably be constitutionally established without providing for restriction of evictions. But as we have seen, *Taylor* v. *Bowles, supra,* p. 834, a landlord who could freely evict his tenants could easily evade rent ceilings. "Because the threat of dispossession is the most powerful compulsion which a landlord may exert to influence and coerce his tenant, any effective rent control program must comprehend a plan for the regulation of evictions." Borders, Emergency Rent Control, 9 Law and Contemporary Problems, 107, 119. So legislatures invariably provide as a practical matter for restriction of evictions in order to insure effective maximum rent regulation.

Now suppose the converse case in which legislation were enacted providing only that occupancy of housing accommodations was frozen, without any provision that the tenant was required to pay a fair and equitable rent. This would probably be invalid as a taking of property without due process of law: the cases which have upheld restrictions of evictions have been predicated on provisions that the landlord continues to receive a fair and equitable rent. *Block* v. *Hirsh, supra; Yakus* v. *United States, supra.* The reason is that a landlord who could not oust a tenant would certainly be at the mercy of the tenant if he were required to negotiate the amount of the rent with such a tenant without any requirement in the law that the rent shall be fair and equitable. It therefore seems apparent that the Legislature cannot provide for a blanket prohibition of evictions, standing alone; it must couple it with a provision for maximum rents.

We thus see that in the one case restrictions on evictions are coupled for practical reasons with maximum rent provisions; in the other the eviction provisions perhaps cannot stand alone but must be coupled with the maximum rent provisions to meet the test of constitutionality. The net effect is that in both cases restriction of evictions is bound up with maximum rent provisions. All this is just another way of saying that the generic term "rent control" covers both maximum rents and restriction of evictions, the two phases of a situation which calls for a rent control statute.

Moreover, the best proof that both statutes are operating in the same area generically characterized as "rent control" are the contrasting provisions of § 4(d) of the Federal Act which recites that no one shall be required to continue to rent his property as against the requirement of § 12(f) that a landlord must continue to rent his property if it has been "habitually" rented. We have put aside the question as to whether these provisions are conflicting. See second paragraph of footnote 1. But no one can seriously argue that they do not cover the same subject matter. They are, in short, both rent control laws.

Indeed, the lower court recognized that a "rent control" statute has two facets: (1) fixing maximum rents; and (2) restricting evictions. It conceded in its opinion that the Federal prohibition against a local rent control law prevents our Legislature not only from fixing rents but also from eliminating or ameliorating the requirement that an eviction proceeding will not lie unless the Federal Administrator authorizes it. The district court thus recognized that anti-eviction regulation is part and parcel of "rent control". But if the insular Legislature cannot relax Federal eviction regulations because the latter are a feature of "rent control", by the same token the Federal eviction regulations cannot be made more severe by local law. They are both "rent control" provisions. And the Congress did not say that only relaxing local "rent control" laws are barred. It said there shall be

no local rent control laws. This means that neither more liberal nor more restrictive rent control Acts shall be enacted locally.

In providing for the first time in 1946 that rent control shall be exclusively a Federal function, the Congress undoubtedly wished to attain regulation by Federal law alone in this area up to the stage of the procedure provided by local law to obtain eviction. Perhaps between 1942 and 1946 local laws involving (a) maximum rents and (b) restriction of evictions which could be reconciled with the Federal Act could be enforced. *Irizarry* v. *District Court,* 64 P.R.R. 90; cf. *Miranda* v. *District Court, supra.* But on July 25, 1946, Congress pre-empted the rent control field. This meant, as to evictions, that the right to possession flowed exclusively from Federal law. Therefore, if the Federal law permitted a landlord to oust his tenant, the insular Legislature could not, under the guise of modifying the procedure or the remedy provided by local law, interfere with this right to possession of the landlord by providing that he shall not have ·such a right of possession unless he can comply with an additional requirement not found in the Federal statute or Regulations.

The tenant and the insular Administrator, who appears here as *amicus curiae,* place great emphasis, as did the lower court, on the Federal Regulations. They provide that after the Federal Administrator issues his certificate of eviction, the landlord must pursue his remedy therefor under local law. And Regulation 6(e) provides that "No provision of this Section shall be construed to authorize the removal of a tenant unless such removal is authorized under the local law."

If § 12(f) had been in effect between 1942 and 1946, perhaps the insular courts would have been justified in enforcing it by virtue of Regulation 6(e). On the other hand, it might have been argued that the purpose of Regulation 6(e) was to avoid disruption of local procedural or remedial devices,

and not to authorize additional substantive restrictions on evictions; and therefore that Regulation 6(e) did not give our Legislature *carte blanche* to impose additional restrictions on eviction. At any rate, this question has become academic. Regulation 6(e), issued prior to enactment of the 1946 Federal Act, must now be read together with and in the light of the 1946 Federal Act prohibiting local rent laws. The local remedy—at any rate since July, 1946—cannot impinge on the subject of rent control. And any provision of local law—whether called a statute modifying a local remedy or a statute providing for rent control—which is in effect a rent control law, is superseded by the Federal Act.

For example, § 12(a) of our Act provides that a landlord may eject his tenant only if the latter fails to pay the rent fixed by the *insular* Administrator for a *month*. But suppose the Federal regulation provided for a higher maximum rent and for ouster for failure to pay rent for a week. Thereafter, a landlord obtains a certificate from the Federal Administrator for eviction of a tenant who, after being in default for three weeks, paid his rent at the lower insular rate. It could not be contended that this tenant could not be ousted despite the fact that the Legislature had modified the "remedy" of unlawful detainer in § 12(a), which prevents eviction under such circumstances. On the contrary, such a restriction on eviction is a "rent control" provision which is prohibited by the 1946 Federal Act. In the same way, in prohibiting a landlord in the present case from ousting his tenant to live in the property himself if it has been "habitually" rented, § 12(f) imposes a restriction on eviction which amounts to "rent control". In both instances, while the 1946 Federal Act does not purport to modify the remedies provided by local law, in order to prevent local rent control it must necessarily reach into any so-called remedial or procedural local law and suspend that portion thereof which under the guise of a change in procedure or remedy provides

in substance for rent control. Cf. *Testa and Fleming* v. *Katt*, 330 U.S. 386.

The lower court cites in support of its ruling, *Edison Savings & Loan Ass'n* v. *Stamberger et al.*, 53 N.Y.S.(2d) 578 (1945); *New York City Housing Authority* v. *Curington*, 50 N.Y.S.(2d) 445 (1944); and *Cannon* v. *Gordon*, 48 N.Y.S. (2d) 124 (1944). These cases relate to the necessity of following the procedure required by local law and have no bearing on the problem herein.

■ A final point remains to be considered. We have been assuming that the Legislature meant in § 12 to cut off *all* proceedings to obtain possession of real property unless the landlord could comply with the conditions provided therein. But the tenant asserts in his brief that ''there is nothing in the law which prevents the plaintiff from pursuing, instead of the summary procedure for unlawful detainer, the ordinary procedure to recover possession of his house.'' Now if this statement were accurate and § 12(f) left the landlord free to file such an ordinary civil suit, we would agree that § 12(f) merely modifies the remedy and is not a rent control statute in violation of the Federal statute prohibiting a local rent control law. Indeed, this is precisely what the Federal Regulations contemplated when they left the question of remedies to local law: the Legislature could provide an ordinary or a summary remedy. The only thing the Legislature could not do was to cut off *all* remedies unless the landlord could comply with additional substantive conditions imposed by local law amounting to rent control.

Our difficulty is that we read § 12 differently. We cannot agree that when the Legislature enacted Act No. 464, which provided for fixing of maximum rents and restriction of evictions under insular law, it meant nevertheless to permit the unrestricted ouster of tenants by ordinary civil actions. Rather we are satisfied that when it provided within the context of Act No. 464 that no action of ''unlawful de-

tainer'' shall be permitted except under certain circumstances, it meant to prohibit any action whatsoever, ordinary or summary, to recover possession of housing accommodations. Otherwise the Legislature would be frustrating its own purpose to freeze occupancy thereof. See *Miranda* v. *District Court, supra.* Also, § 12 restricts eviction of tenants of commercial buildings which are not covered by the Federal Act. It is difficult to believe that the Legislature meant that landlords could file an ordinary action to recover possession of commercial buildings despite the provisions of Act No. 464. We cannot attribute such a *brutum fulmen* to the Legislature. The insular Administrator in his brief does not adopt this suggestion of the tenant. Nor can we. Instead we hold that § 12 provides for an absolute prohibition against all suits by a landlord to recover property is the possession of his tenant unless its conditions are fulfilled. And as such § 12(*f*) is a rent control provision.

Our views may be summarized as follows: Congress has provided that ''rent control'' of housing accommodations shall consist of maximum rentals plus restriction of evictions. But Congress has provided, perhaps because of constitutional reasons, that no one shall be required to continue to rent his property. The Federal Administrator has accordingly provided by regulation that a landlord may evict his tenant to live in the property himself. But the insular Legislature has legislated on this same subject. In § 12(*f*) it prohibited a landlord who has ''habitually'' rented his property from evicting his tenant even though he desires to live in it himself. We do not stop to determine if § 12(*f*) is constitutional or if it is in conflict with the provision in the Federal Act that no one shall be required to continue to rent his property. Instead we rest our decision on the following: § 12(*f*) is a ''rent control'' provision because it provides for a restriction on evictions in addition to the restrictions on evictions set forth in the Federal rent control statute and Regulations. The 1946 Federal Act, enacted after § 12(*f*)

was passed, provides that while maximum rents are in effect under the Federal Act, housing accommodations shall not be subject to rent control by local law. The imperative of the 1946 Federal Act is clear. Section 12(f) may or may not be in conflict with the Federal law. But it is a rent control law. That requires us to hold that it is inoperative until June 30, 1947, when the Federal Act expires.

In view of the result we have reached, we need not consider the other questions raised by the appellant.

The order of the district court will be reversed and the case remanded with instructions to remand it to the municipal court for further proceedings not inconsistent with this opinion.