VÍCTOR RIVERA SANTIAGO, Plaintiff and Appellant, *v.* R. COBIÁN CHINEA & CO., INC., Defendant and Appellee.

No. 9783. Argued November 10, 1948.—Decided March 18, 1949.

*Francisco Ponsa Feliú, Philip F. Herrick, Pascual Amado Rivera* and *José C. Jusino* for appellant.   *Vicente Géigel Polanco* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered· the opinion of the Court.

The plaintiff purchased a two-story building situated in Bayamón.   The defendant has a business established in the· first floor by virtue of a lease from month to month entered into with the former owner, at a monthly rental of $125.   The· plaintiff assumed the contract but on February 9, 1948 he notified the defendant in writing of his intention to terminate the lease on the 29th of that month.   As the defendant refused to vacate the premises, the plaintiff, on the 11th of the following month, filed this suit for unlawful detainer.   He alleged as the only ground for his cause of action, that he needed the premises to establish his own business therein.

On March 19, 1948 the defendant demurred and answered the complaint.   The demurrer was predicated on the fact that the Reasonable Rents Act of April 25, 1946 (Sess. Laws, p. 1326) which became effective on July 17, 1947 by virtue of a decision of the Executive Council, declaring the existence of an emergency, applies to commercial or industrial buildings as well as to housing accommodations;[1] that said·Act freezes contracts of lease of buildings used for commercial purposes [2] and it renews the contracts during the existence of the emergency to which the Act refers, as long as the tenant continues to pay the stipulated rent; that a person acquiring a leased property shall be subject to the terms of this Act and cannot claim any rights other than those therein established for the original owner;[3] and finally, that the ground alleged by the plaintiff is not contemplated by the provisions of § 12 of said Act.

---

[1] Section 4(*a*) of Act No. 464 of 1946, as amended by Act No. 395 of 1947 (Sess. Laws, p. 756.).

[2] Section 12 of Act No. 464.

[3] Section 15 of Act No. 464.

The demurrer was sustained and consequently the complaint was dismissed.

The plaintiff appealed. He admits that the ground averred is not contemplated by the Reasonable Rents Act; he concedes that the Legislature of Puerto Rico has power to regulate housing accommodations and to establish maximum rents and restrictions of evictions, since said authority emanates from its police power; he also concedes that in the exercise of this power the Legislature may limit and curtail property rights for the benefit of public welfare; that the control and restriction of evictions is, under certain circumstances, a necessary incident of maximum rent control, and finally, that the Legislature may regulate rents and evictions from commercial buildings in the same way as in the case of housing accommodations.

Appellant maintains, however, that the police power does not go so far as to forbid a landowner from bringing an action for unlawful detainer when he in good faith intends to recover the possession of the building or premises to establish his own business or residence therein; that to deprive a landlord of that right is unconstitutional: (1) because it deprives him of his property without due process of law; (2) because it does not constitute a valid exercise of police power; and (3) because it amounts to a deprivation of his property without just compensation.

Appellant invokes, by analogy, among others, the cases of *Wilson* v. *Brown*, 137 F.2d 348 (E.C.A., 1943) and *Taylor* v. *Bowles*, 145 F.2d 833 (E.C.A., 1944), which construed the Emergency Price Control Act and which is applicable only to housing accommodations. This federal statute expressly recognizes the right of the owner to evict the tenant when he seeks in good faith to recover possession of his property for his residence or that of his family. He lays great emphasis on the fact that in *Taylor* v. *Bowles, supra,* as in the more recent case of *Woods* v. *Durr*, 170 F.2d 976 (C.A. 3, 1948), certiorari granted 17 L.W. 3246, it is said that probably this

provision was placed in the federal statute to avoid possible constitutional difficulties. Naturally, the federal courts have not had the opportunity to hold that in the absence of that provision the Act would be unconstitutional. But assuming that the freezing of housing accommodations, even when the landlord required possession thereof to use it as his domicile, were unconstitutional, would that imply that the situation is the same for commercial or industrial buildings? In *Cintrón* v. *Municipal Court*, 67 P.R.R. 743, the constitutionality of Act No. 464 was attacked on the ground that, as urged by the plaintiff, the owner of a commercial building may regain possession from a month-to-month tenant if he in good faith intends to use it for his own business. The question was not decided in that case because plaintiff was not the owner but a sub-lessor and, therefore, did not have the standing to raise the question. In the instant case appellant is the owner of the building and therefore has the standing to assail the constitutionality of the Act.

In view of the admissions in the appellant's brief, we deem it unnecessary to refer to the Declaration of Policy of Act No. 464 in search of light as to the reasons which prompted the Legislature to enact the statute with reference to rental of buildings or premises devoted to commercial use. See *Cintrón* v. *Municipal Court, supra*, page 750. Accordingly, we concentrate our discussion on the question of whether a law which bars the owner of a building from recovering its possession to use it as his own place of business is unconstitutional.

It seems to us that it cannot be seriously alleged that the effect of Act No. 464 is to deprive appellant of his property without just compensation, since it only deprives him of its use, temporarily, that is, during the emergency caused by post-war conditions and in the meantime he is receiving a monthly rental of $125 on which appellee and appellant agreed when the latter purchased the building and assumed

the existing lease contract. As Mr. Justice Holmes says in *Block* v. *Hirsh* (1921) 256 U. S. 135, 157: "A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change."

Eliminating this alleged ground of unconstitutionality, the other two questions are reduced to a determination of whether under the circumstances of this case the Legislature acted within its police power. *Nebbia* v. *New York*, 291 U. S. 502 (1934) 78 L.ed. 940, serves as our guide to determine the conditions under which the use of the police power would constitute an unwarranted interference with the rights of the owner. It is stated therein:

"Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

We have pointed out that appellant concedes that the Legislature is authorized within its police power to regulate the use of premises for commercial or industrial purposes during the existence of the emergency. Consequently, we shall determine whether the provisions of said § 12 constitute an unnecessary, arbitrary, or unwarranted interference with the individual liberty of the owner of the property. For this purpose we must bear in mind that the modern conception of property rights is far from that entertained by the framers of the Constitution. Today no one would call property rights "sacred", as so often occurred in the past century. Today property has a social function, which is to serve society and not its owner exclusively. As appellee properly says in its brief: "The new concept of property attaches to it an eminently social function, which is far from the narrow definition found in the Roman Law, which defined property as 'the right to use and abuse of the things as far as the law permits'. In the modern concept the individual privilege is subordinated to the social interest."

If we were to construe the statute as urged by appellant many would be the hardships caused to going concerns if, despite the shortage of commercial buildings due to the post-war emergency, evictions were permitted under the conditions set forth in this case. This would give rise to the reprehensible abuse that whenever one wished to eliminate a competitor he could easily accomplish it by purchasing the building occupied by the former and immediately filing an unlawful detainer suit under the guise of desiring to withdraw the building from the rental market or to establish a business of his own.[4] But even if plaintiff were not a competitor and would have no other place to establish his business, the stability of existing business enterprises would be destroyed and the owners would run the risk, in view of the impossibility to find another place, of being forced at any time to sell their stock at any price and ruin their business under the pressure of an unlawful detainer proceeding. It is precisely this evil that the challenged statute endeavors to remedy. It seems reasonable that in the light of these facts the right of the owner be subordinated to the social interest.

---

[4] We have not overlooked the fact that § 12(A) of the Reasonable Rents Act was amended by Act No. 201 of May 14, 1948 (p. 574) to the effect that a cause of action shall lie in cases like the present when the following conditions concur:

"*a*. That the lessor has acquired the property prior to July 17, 1947, the date of effectiveness of the Reasonable Rents Act as regards commercial and business premises, and that the premises were leased for a fixed period, and the term of the lease has expired.

"*b*. That the lessor has not in the same locality, a business of the same kind as the one operated by the tenant or similar thereto established in a building of his own or a building belonging to another.

"*c*. That the lessor is interested in the premises to occupy them personally with a business exclusively of his own.

"*d*. The mere fact that the lessor wishes or needs to extend his business shall not be sufficient cause to justify his necessity of occupying the premises he may have leased."

But this amendment was approved after judgment was rendered and the case was appealed to this Court. The appellant does not seek to apply this amendment to the present case and the fact that the Legislature restricted the action does not imply that the Act was unconstitutional as it read prior to the amendment.

■ In view of the facts in this case we do not see how it can be maintained that § 12 of Act No. 464 is an unnecessary and unwarranted interference with property rights. We should bear in mind that every statute is presumed to be constitutional and in order to decide otherwise we must be fully convinced of its unconstitutionality. The lower court therefore did not err in sustaining the demurrer.

The judgment will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

———————

Mr. Justice Todd, Jr., dissenting.

I dissent. In my opinion the police power of the Legislature may not, even during an emergency, go to the extreme of compelling an owner to keep his property in the rental market, whether for dwelling or for commercial purposes.

In *Latoni v. Municipal Court*, 67 P.R.R. 130, footnote (1), page 138, because it was unnecessary, we left undecided the question of whether the provisions of § 12 (*f*) of Act No. 464 of 1946 known as the Reasonable Rents Act, to the effect that a landlord who has "habitually" rented his property must continue to do so, is valid, although we did say that it "may be of doubtful constitutionality," and we added:

". . . Congress carefully provided the contrary in the Federal Act. It said in § 4 (*d*) : 'Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent.' 50 U.S.C.A., App., § 904 (*d*). Federal Regulation 6 (*a*) (6) as we have seen implements this disclaimer. The Emergency Court of Appeals therefore held that a landlord cannot be required to continue to rent his property; he may oust a tenant to live in the property himself or to leave it vacant. In so holding the court remarked that 'Perhaps [§ 4 (*d*)] . . . was included in the Act to avoid constitutional difficulties.' *Taylor v. Bowles*, 145 F. 2d 833, 34 (E.C.A., 1944) ; *Taylor v. Porter*, 156 F. 2d 805, 810 (E.C.A., 1946). Cf. *Bowles v. Willingham*, 321 U. S. 503, 517; *Yakus v. United States*, 321 U. S. 414, 431, 437–38; *Wilson v. Brown*, 137 F. 2d 348, 351–52 (E.C.A., 1943) ; *Block v. Hirsh*, 256 U. S. 135; *Marcus Brown Co. v. Feldman*, 256 U. S. 170; *Levy Leasing*

*Co.* v. *Siegel,* 258 U. S. 242; *Miranda* v. *District Court,* 63 P.R.R. 155; *Ex parte Irizarry,* 66 P.R.R. 634; *Roig* v. *People of Puerto Rico,* 147 F. 2d 87 (C.C.A. 1st, 1945)."

I am convinced, after studying the cases cited in the footnote in the *Latoni* case, that owners of both dwelling and commercial buildings are entitled to withdraw them from the rental market and use them for their own benefit or prejudice. The fact that the Legislature has partially recognized that right as to housing accommodations [1] does not mean that it may deprive owners of their property when they wish to use it as a commercial establishment rather than as a dwelling. This case does not involve any conflict between the modern concept of property rights and that entertained by the framers of the Constitution. Modern regulation of property rights, especially during an emergency, would not have been sanctioned in the past. But it is one thing to regulate and to fix maximum prices, etc. It is a wholly different thing to prohibit a landlord from withdrawing in good faith his property from the rental market in order to live in it himself or to establish a business therein. That is not regulation. Rather it deprives him of the use and enjoyment of the property without due process of law and compels him to continue in the business of renting in which he is no longer interested. This action, in my opinion, is "arbitrary, discriminatory or demonstrably irrelevant", as stated in *Nebbia* v. *New York,* 291 U. S. 502, 539, to the policy the Legislature is free to adopt as to the use and enjoyment of private property. Moreover, the *Nebbia* case interpreted a statute on regulation of prices with respect to the sale of milk in New York. That statute, of course, did not impose the obligation on anyone to engage in the said business. The case therefore is not an authority supporting

---

[1] And also as to sale of commodities, pursuant to § 10(*b*) of Act No. 228 of 1942 creating the General Supplies Administration, which in part provides:

". . . Nothing in this Act shall be construed to require any person to sell any staple commodity . . ."

See *Ex parte Irizarry,* 66 P.R.R. 634.

the conclusion of the court in the present case. Neither is *Block* v. *Hirsh*, 256 U. S. 135, 154. The statute construed therein expressly authorized the owner to recover possession of his property ". . . for actual and *bona fide* occupancy by himself or wife, children or dependents . . . upon giving thirty days' notice in writing". Hirsh did not give such a notice, but requested possession of his property for his own use. Upon refusal he attacked the statute—which provided for rent control for two years—as unconstitutional. The Supreme Court upheld the constitutionality of the Act as an emergency measure.

In *Yakus* v. *United States, supra,* in referring to § 4 (*d*) of the Price Control Act which provides that:

". . . Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent. . . ."

the court said:

". . . Petitioners were therefore not required by the Act, *nor so far as appears by any other rule of law,* to continue selling meat at wholesale if they could not do so without loss. . . ." (Italics ours.)

We know of no rule of law that supports the conclusion of the court in the present case. In *Buckeye* v. *Boles*, 141 F. 2d 692, 696, cited in *Ex parte Irizarry, supra,* the plaintiff corporation which was engaged in renting parking lots, when a change in the hourly rates which it charged was rejected by the Administrator alleged that the rejection amounted to requiring the plaintiff to sell his one-hour service and that this constituted a violation of the Act. The Emergency Court of Appeals said:

". . . The answer to this contention obviously is that the Administrator is not interfering with complainant's right to discontinue the one hour service. *It may discontinue the service if it desires,* but may not inaugurate a program which will have the effect of increasing its minimum charge." (Italics ours.)

634

In *Taylor* v. *Bowles, supra,* the same court said:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"The legal position taken by the Regional Administrator seems to be that, under Section 4(*d*) of the Act, the Administrator is not required to permit withdrawal of the housing accommodations from the rental market, unless the landlord intends permanently and unconditionally to cease his rental operations. Section 4(*d*) cannot be read so narrowly. Just as the owner of a commodity can withhold it from sale for the time being, hoping that the ceiling price will later be raised, *so a landlord may withhold his housing accommodations from the rental market because of dissatisfaction with the existing maximum rents.* It is quite true that the rent control program would be jeopardized if landlords generally went on such a strike. But Congress, in affording this leeway to an occasional obstinate landlord who resents government interference with what would, in an unregulated market, be a 'gold mine', has evidently concluded, with good reason, that the eventuality of such a general strike is not to be anticipated, particularly where the rent regulation is 'generally fair and equitable'." (Italics ours.)

In the recent case of *Woods* v. *Durr*, 170 F. 2d 976, 979, (C.C.A. 3, 1948), it is stated that:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"It seems reasonably clear that Section 4(*d*) was placed in the Emergency Price Control Act to avoid possible constitutional difficulties. In *Bowles* v. *Willingham,* 1944, 321 U.S. 503, at page 517, 64 S.Ct. 641, 648, 88 L.Ed. 892, the Supreme Court, in upholding the constitutionality of the rent control provisions of the Emergency Price Control Act of 1942 against attack upon the ground that they constituted a taking of private property for public use without just compensation, said: 'We are not dealing here with a situation which involves a "taking" of property. *Wilson* v. *Brown, supra.* By § 4(*d*) of the Act it is provided that "nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent." There is no requirement that the apartments in question be used for purposes which bring them under the Act.'

"And to the same effect see *Wilson* v. *Brown,* Em. App. 1943, 137 F. 2d 348."

I do not believe that the construction I am giving to the statute would work any hardships on present enterprises as I do not agree that it would be easy and ordinary for competitors to purchase many occupied buildings in order to withdraw them from the rental market or in order to establish their own business therein. As stated in *Woods* v. *Durr, supra,* page 980, the purpose of the Housing and Rent Act of 1947:

". . . was not, as the plaintiff asserts, 'to preserve the continuity of possession by tenants under the "deficit in housing." ' On the contrary the history and language of the act, as well as of the Emergency Price Control Act of 1942 which it followed, make plain that its purpose was to control inflation in rents and not to protect tenants in their possession. Control of evictions was not included in the act as an end in itself but in order to prevent circumvention and evasion of the maximum rents which it was the primary purpose of the act to impose. See Judge Magruder's discussion of this point in *Taylor* v. *Bowles,* Em. App. 1944, 145 F. 2d 833, 834. While Congress did seek, by other legislation, to meet the wartime deficit in housing, it is obvious that freezing tenants in possession of existing housing accommodations could not solve that problem. . . ."

This is a case which was decided on a demurrer and accordingly we must accept as true the allegation of the complaint that the action was brought in good faith for the purpose alleged. Insofar as § 12 of Act No. 464 of 1946 precludes this suit, I consider it void and unconstitutional.

The judgment should be reversed and the case remanded for further proceedings.