In the Matter of NEW YORK UNIVERSITY, Petitioner, against TEMPORARY STATE HOUSING RENT COMMISSION et al., Respondents.

Supreme Court, Special Term, New York County, July 6, 1951.

M. *Monroe* for petitioner.

*Robert H. Schaffer* for Temporary State Housing Rent Commission, respondent.

*David B. Tolins* for Myra Coco and others, as tenants, respondents.

HAMMER, J. The petitioner herein, New York University, as landlord of housing accommodations at 50 Washington Square South, 245 and 249 Sullivan Street, and 93 West 3rd Street, Manhattan, New York City, seeks review of a determination and order of the Temporary State Housing Rent Commission pursuant to article 78 of the Civil Practice Act and section 9 of the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250, and L. 1951, ch. 443.) The determination and order to be reviewed denied petitioner's application for certificates of eviction of residential tenants from the premises aforementioned.

Petitioner seeks, in good faith it is alleged, to recover possession of the premises in order to use them for educational purposes, to wit., a dormitory and dwelling accommodations for members of its student body and staff on a nonprofit basis. On September 29, 1950, petitioner applied to the local rent administrator for certificate of eviction on the grounds "(a) that because of immediate and compelling necessity and exceptional circumstances, and because the continued operation of said premises as housing accommodations would impose undue hardships upon it, the petitioner seeks, in good faith, permanently to withdraw said premises from both the housing and nonhousing rental markets without any intention of selling them; and (b) that petitioner intends, in good faith, to withdraw said premises from the rental market and that the requested removals or evictions are not inconsistent with the purposes of the Emergency Housing Rent Control Law [Laws of 1950, chapter 250] or the rent and eviction regulations of the Temporary State Housing Rent Commission promulgated pursuant thereto, and would not be likely to result in the circumvention or evasion thereof."

Proceedings thereafter had before the local rent administrator resulted on or about December 29, 1950, in an order of denial of the certificate of eviction on the ground that the facts in petitioner's case do not warrant the relief requested under sections 54 and 59 of the regulations. Protest to the State Rent Administrator resulted in further order of denial on or about April 23, 1951. The instant proceeding then followed.

It is petitioner's contention that the orders of respondent were arbitrary because they contravene section 59 of the Rent and Eviction Regulations; because they deprive petitioner of its property without due process of law and because petitioner established before respondent exceptional circumstances, immediate and compelling necessity in good faith requiring it to use the premises permanently for educational purposes, as a dormitory and dwelling accommodations for members of its student body and staff as an incident of their enrollment in or employment by petitioner's school of law, on a nonprofit basis, without any intention of selling or renting them.

Respondent commission contends that petitioner has not met the test of section 59 in that it does not intend " to permanently withdraw occupied housing accommodations from both the housing and non-housing rental markets ", but on the contrary, intends to substitute " qualified students and Fellows from throughout the United States and from foreign lands " for the present residents. Secondly, respondent claims " undue hardship " has not been shown. Thirdly, the respondent claims its general power and right of discretion permitted the denial of the certificate requested without prejudice to another application by petitioner after attempts to relocate the present tenants.

Sections 54 and 59 of the Rent and Eviction Regulations read as follows:

" Section 54. * * * The Administrator may issue an order granting a certificate if the removal or eviction meets the requirements of Sections 55, 56, 57, 58 or 59. The Administrator may also issue orders granting certificates in other cases if the requested removal or eviction is not inconsistent with the purposes of the Act or these Regulations and would not be likely to result in the circumvention or evasion thereof.

" Section 59. * * * A certificate shall be issued where the landlord establishes that he seeks in good faith to permanently withdraw occupied housing accommodations from both the housing and non-housing rental markets without any intent to rent or sell the housing accommodations. No certificate shall

be issued under this section unless the landlord establishes that he seeks to recover possession of the housing accommodations because of an immediate and compelling necessity and exceptional circumstances and the continued operation of the housing accommodations by the landlord will impose undue hardship on him, or where the granting of the certificate is inconsistent with the purposes of the Act.''

The question presented is whether or not the purposes for which petitioner seeks its certificate are such as constitute a withdrawal of the premises from the rental market. The term '' rental market '' implies a form of commercial activity which constitutes the public offering of space at rentals calculated to yield a profit. The record presents a proposed use of the premises by petitioner contrary to a use for profit. It intends not to offer the space to the public for profit but only to a limited class of persons consisting of those participating in its educational program, on a nonprofit basis. The dean of petitioner's school of law avers that the premises are urgently needed to provide dwelling space for the students, staff and faculty of its law school; that this need is immediate; that the personnel to be housed include two to four instructors, six teaching fellows, five Food Law fellows, thirteen fellows in the Inter-American Law Institute, thirteen American graduate students of Latin American law sharing living accommodations with the Inter-American Law Institute fellows, ten Samuel J. Tilden Scholars, ten Elihu Root Scholars, fifty to seventy-five graduate students from outside the metropolitan area, an indefinite number of research assistants for projects not yet implemented. The dean further avers that sound educational policy requires they all live in the immediate vicinity of the law center, that accommodations are most urgently needed for thirteen Latin American fellows now in attendance in the Inter-American Law Institute and for thirteen American fellows who will presently be participating in that program. Continuance of these fellowships it is stated depends on adequate housing facilities for the students and if not available may have to be curtailed or discontinued, thus depriving the petitioner of revenue from tuition fees and ability to promote the educational program intended. Petitioner further urges that the law school is not local in scope but teaches the law of all States and, on a co-operative basis, of foreign countries; that it is sound educational policy to have students in attendance in both undergraduate and graduate courses who come from throughout

the United States and from foreign countries; that adequate, low-cost dwelling accommodations are needed for them, near the school. This devotion to the afore-mentioned purposes is also urged by petitioner as adequate showing of its good faith and as constituting a permanent withdrawal of the premises from the rental market. It is apparent that the petitioner is not offering the space to the public for profit and that is not engaged in commercial activity, but, quite to the contrary, is conducting its educational program, national and international in scope, as an adjunct of which it seeks to provide dwelling accommodations for those persons participating therein. This proposed change constitutes, within the meaning of the statute, a withdrawal from the rental market. In *Bowles* v. *Willingham* (321 U. S. 503), the Supreme Court, in sustaining the constitutionality of the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*), said: " We are not dealing here with a situation which involves a ' taking ' of property. * * * By § 4(d) of the Act it is provided that ' nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent.' There is no requirement that the apartments in question be used for purposes which bring them under the Act.'' (P. 517.)

In *Wilson* v. *Brown* (137 F. 2d 348), the United States Emergency Court of Appeals spoke as follows: " Furthermore, the Act does not require the landlord to continue his property in the market for housing accommodations. Section 4(d) of the Act provides: ' Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent.' In accordance with this statutory provision, the regulation now in question provides that landlord may evict a tenant whose lease has expired if he ' seeks in good faith not to offer the housing accommodations for rent.' The landlord is thus free to occupy the property himself, or devote it to some commercial enterprise, or utilize it in any other way. This serves to emphasize that there has been no ' taking ' of his property in the constitutional sense.'' (P. 352.)

In *Taylor* v. *Bowles* (145 F. 2d 833), the Emergency Court of Appeals said: " The legal position taken by the Regional Administrator seems to be that, under Section 4(d) of the Act, the Administrator is not required to permit withdrawal of the housing accommodations from the rental market, unless the landlord intends permanently and unconditionally to cease

his rental operations. Section 4(d) cannot be read so narrowly. Just as the owner of the commodity can withhold it from sale for the time being, hoping that the ceiling price will later be raised, so a landlord may withhold his housing accommodations from the rental market because of dissatisfaction with the existing maximum rents. It is quite true that the rent control program would be jeopardized if landlords generally went on such a strike. But Congress, in affording this leeway to an occasional obstinate landlord who resents government interference with what would, in an unregulated market, be a ' gold mine ', has evidently concluded, with good reason, that the eventuality of such a general strike is not to be anticipated, particularly where the rent regulation is ' generally fair and equitable '. * * * Since Section 4(d) of the Act permits him thus to withdraw the apartment house from the rental market, it necessarily follows that to grant him the certificate of eviction, on the basis of the facts found by the Regional Administrator, would not be inconsistent with the purposes of the Act." (Pp. 835–836.)

The rule laid down in the foregoing cases was incorporated in the State Residential Rent Law in clear and unmistakable language. Subdivision 4 of section 10 of the statute reads as follows: " 4. Nothing in this act shall be construed to require any person to offer any housing accommodations for rent, but housing accommodations already on the rental market may be withdrawn only after prior written approval of the state rent commission, if such withdrawal requires that a tenant be evicted from such accommodations." (L. 1946, ch. 274, § 9, subd. 4, as amd. by L. 1950, ch. 250, renum. § 10, subd. 4 by L. 1951, ch. 443.)

It is clear that the intent and purpose of the statutory provision authorizing withdrawal from the rental market is to leave with the owner of property the power to determine whether or not it will be used for a purpose which brings it under the act. It follows that any change in the use of the property from one subject to regulation to one free therefrom constitutes a withdrawal from the rental market within the meaning of the statute.

Subdivision 2 of section 2 of the act, defining the term "housing accommodation " to which the application of all of the subsequent regulatory provisions of the statute is limited, thereby defining the rental market which the statute controls, provides as follows:

" 2. ' Housing accommodation.' Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place, boarding house, lodging house or hotel, * * * except that it shall not include structures in which all of the housing accommodations are exempt or not subject to control under this act or any regulation issued thereunder; or

" (a) a hospital, convent, monastery, asylum, public institution, or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a nonprofit basis; or ". (L. 1946, ch. 274, § 2, subd. 2, as amd. by L. 1951, ch. 443.)

College and school dormitories and any institution operated exclusively for charitable or educational purposes on a nonprofit basis are specifically excluded from the rental market which the statute undertakes to control. Nor do such facilities fall within the scope of the Commercial and Business Rent Laws (L. 1945, ch. 3, § 2, as amd. by L. 1951, ch. 431; L. 1945, ch. 314, § 2, as amd. by L. 1951, ch. 430). It follows that a change from a controlled use of premises to such a use, as the commission has affirmatively found it to be the intention of the petitioner to effect, constitutes a withdrawal from the rental market within the meaning of subdivision 4 of section 10 of the State Residential Rent Law.

The condition of relocation which respondent commission seeks tò impose in this case on petitioner amounts to a denial of the absolute right afforded by the statute and is inconsistent therewith. (Loab Estates v. Druhe, 300 N. Y. 176.)

The record before the court is convincing that petitioner is in immediate need of dormitory facilities and that the educational program it is conducting will be seriously jeopardized unless this need is fulfilled, with resulting loss in revenue from tuition to petitioner and great detriment to its educational programs of broad importance to the public. The record further establishes that petitioner will not continue the use of the premises as " housing accommodations ", a term which within the meaning of the act defines the jurisdiction of the commission and the scope of the rental market from which withdrawal is authorized. Upon the authorities defining " withdrawal from the rental market " herein cited, the proposed use constitutes such a withdrawal. The court is convinced that the determination and order of the respondent in denying

petitioner's application for certificates of eviction denies petitioner rights guaranteed it by subdivision 4 of section 10 of the State Residential Rent Law and deprives petitioner of its property without due process of law. The respondent's orders are inconsistent with the intent of section 59 of the Rent and Eviction Regulations and upon the entire record respondent's determinations were arbitrary and capricious. The determinations and orders are therefore set aside and the respondent commission is directed to issue said certificates upon the expiration of the waiting period provided for in subdivision 2 of section 9 of the act. Settle order.