AMÉRICO MIRANDA, peticionario, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. R. LA COSTA, JR., JUEZ, demandada.

Núm. 1542.—*Sometido:* Noviembre 15, 1943. *Resuelto:* Marzo 6, 1944.

*Dubón & Ochoteco* y *Otero Suro & Otero Suro,* abogados del peticionario; *Hartzell, Kelley & Hartzell,* abogados del interventor, demandado en el pleito principal.

El Juez Presidente Interino Señor Travieso emitió la opinión del tribunal.

Rafael Menéndez Ramos, dueño de una casa en Miramar, Santurce, la dió en arrendamiento a José María Jarabo, mediante contrato verbal de mes a mes, por un canon de $75 mensuales. En junio 7, 1943 Menéndez vendió la casa al peticionario Miranda, quien ni reconoció ni renovó el contrato de arrendamiento. En julio 6, 1943 Miranda pidió a Jarabo que le entregase la casa, alegando que la necesitaba para vivienda de su familia, y le devolvió el giro por los $75 de la renta del último mes. Negóse Jarabo a desocupar la casa y entonces Miranda interpuso demanda de desahucio en precario ante la Corte de Distrito de San Juan. En su contestación, Jarabo negó que él estuviera ocupando la casa precariamente; alegó su contrato con Menéndez; y como defensa especial, que el demandante habita en la actualidad una casa de su propiedad, y que lo ha sido dentro del año anterior al comienzo de la acción de desahucio.

La corte inferior dictó sentencia declarando sin lugar la demanda y el demandante interpuso el presente recurso de *certiorari.* Por considerar que la cuestión envuelta es de gran interés público, el suscribiente, como Juez de Turno, expidió el auto, y el caso fué visto ante el tribunal en pleno.

Los fundamentos del presente recurso son:

1°. Que la Ley número 14 de 21 de noviembre de 1941 (Leyes de 1941, Sesión Especial, pág. 45) no es aplicable a los casos de desahucio en precario ni tampoco a aquellos

en que no existe relación contractual alguna entre el propietario y el ocupante del inmueble, ni a los casos de compra de finca arrrendada en que el adquirente opta por no reconocer el contrato no inscrito celebrado por el ocupante con el anterior dueño.

2°. Que la citada ley le priva de su propiedad sin el debido procedimiento de ley, le niega la igual protección de las leyes y menoscaba la validez de los contratos, todo ello en violación a los preceptos estatuídos por los párrafos 1 y 5 del artículo 2 de nuestra Carta Orgánica.

3°. Que la citada ley tiene por objeto enmendar las secciones 2, 6, 9, y 17 de la Ley de Desahucio y ni su título expresa dicho objeto, ni se ha publicado en su totalidad ni decretado nuevamente, la parte de la referida ley que aparentemente se trató de enmendar, todo ello en contravención a lo dispuesto por nuestra Ley Orgánica en los párrafos 8 y 9 de su artículo 34.

■ José María Jarabo no es un poseedor de la finca en precario. Él tomó posesión y estuvo disfrutando el inmueble por virtud de un contrato con el anterior dueño de la finca, que por no estar inscrito en el registro de la propiedad expiró tan pronto como Miranda adquirió la casa, quien rehusó asumir la continuación del arrendamiento. Manresa, Comentarios Ley de Enjuiciamiento Civil, Ed. 1910, tomo 6, pág. 27. *Sosa* v. *Río Grande Agrícola Co.*, (1911), 17 D.P.R. 1149, 1152; *Rourke* v. *Pacheco*, (1912), 18 D.P.R. 981, 984; *López* v. *Central Eureka, Inc.*, (1919), 27 D.P.R. 291, 293 *et seq.*; *Cuesta* v. *Ortiz*, (1921), 29 D.P.R. 494, 496 *et seq.*; *Angleró* v. *Fernández*, (1922), 31 D.P.R. 262, 264; *Arrache et al.*, v. *Carlsson*, (1924), 33 D.P.R. 250, 255; *Flores* v. *Delgado*, (1925), 34 D.P.R. 778, 779, 780. Al mismo efecto dispone el Código Civil (Ed. 1930) en la primera parte de su artículo 1461 que, "El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria."

En sus comentarios al artículo 1571 del Código Civil Español, que es el equivalente del 1461 del nuestro, dice Manresa:

"El Código en este artículo ha instituído evidentemente una causa más de desahucio, causa que no arranca de hecho u omisión del arrendatario como las demás que hemos examinado, sino del acto de traslación de dominio realizado por el arrendador, que al engendrar una nueva relación jurídica, ejerce positiva influencia sobre la antes existente por razón de los principios en que cada una se funda y del objeto común sobre que recaen, que es la finca arrendada." Manresa, tomo 10 (Ed. 1908) pág. 637.

El artículo 631 del Código de Enjuiciamiento Civil (Ed. 1933) en su forma original disponía:

"Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas, puestos por el propietario en sus fincas, y cualquiera otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna."

Es evidente, pues, que de acuerdo con lo dispuesto en el artículo 1461 del Código Civil y el artículo 621 del Código de Enjuiciamiento Civil, el demandante Miranda tendría el derecho indiscutible de desahuciar a Jarabo como detentador de la posesión del inmueble.

■ ¿Cuál es el efecto de la Ley número 14 de 1941 sobre el derecho del demandante a recobrar la posesión de su finca?

La citada ley enmendó el artículo 621 del Código de Enjuiciamiento Civil, supra, añadiéndole lo siguiente:

"Disponiéndose, *sin embargo,* que no se declarará con lugar acción alguna para recobrar la posesión de un inmueble ocupado para fines de residencia en las zonas urbanas de un municipio o del Gobierno de la Capital de Puerto Rico, excepción hecha de una acción para recobrar dicha posesión por el fundamento . . . . ." y a continuación se enumeran los casos en que procede el desahucio. Estos podemos resumirlos como sigue:

(*a*) Cuando vencido el término del contrato resulta indeseable por razones de orden moral que el ocupante continúe en la posesión del inmueble.

(*b*) Cuando el propietario procura de buena fe recobrar todo o parte del inmueble para residencia de él o de su familia, siempre y cuando que dicho propietario habite una casa que no es. de su propiedad. ni lo ha sido dentro del año anterior al comienzo de la acción.

(*c*) Cuando el propietario desea demoler el local con el fin de edificar una nueva construcción.

Añade la ley, que no se expedirá orden de lanzamiento en las acciones para recobrar la posesión de un inmueble por el fundamento de haber vencido el término del arriendo a menos que el demandante pruebe que la acción es una de las mencionadas en las excepciones antes enumeradas.

El lenguaje del estatuto es claro y terminante. Prohibe que se declare con lugar cualquier clase de acción que tenga por objeto recobrar la posesión de una casa ocupada para fines de residencia y situada dentro de las zonas urbanas de los Municipios o de la Capital de Puerto Rico, excepto en aquellos casos en que el demandante alegue y pruebe que su demanda está basada en una o más de las excepciones reconocidas por el mismo estatuto.

En el presente caso el demandante Miranda formuló una demanda en la que se limitó a alegar que él adquirió la casa por compra a Menéndez Ramos; que el demandado detenta la posesión y disfrute de la finca en precario, sin contrato y sin pagar canon o merced alguna; que el demandado ocupa la casa como residencia para sí y su familia, y se ha negado a desalojarla. No alegó el demandante que deseara el inmueble para residencia de él o de su familia. Empero, el demandado alegó en su contestación, como defensa especial, que Miranda "habita en la actualidad una casa de ·su propiedad y que lo ha sido dentro del año anterior al comienzo de esta acción". La acción fué comenzada el 4 de agosto de 1943. La corte inferior declaró probado el hecho de que el

peticionario vive en una casa, que aunque no es de su propiedad, lo era el día 11 de mayo de 1943, o sea dentro del año anterior al comienzo de la acción de desahucio. Siendo ello así, la corte inferior no erró al resolver que la demanda en este caso no está comprendida dentro de las excepciones establecidas por el estatuto y que lo procedente era declararla sin lugar.

La segunda cuestión que debemos resolver es la de si la Ley número 14 de 21 de noviembre de 1941 viola las disposiciones de los párrafos 1 y 5 del Artículo 2 de la Carta Orgánica, o sea si priva al demandante de su propiedad sin el debido procedimiento de ley o le niega la protección igual de las leyes, o si en alguna forma menoscaba la validez de algún contrato.

De acuerdo con la "Declaración de Principios" que sirve de preámbulo a la citada ley, el propósito que tuvo el legislador al aprobarla fué el de proteger a las personas que durante la presente emergencia pública se encuentran viviendo con sus familias en casas arrendadas, impidiendo que los dueños de dichas casas, "aprovechándose de las condiciones mundiales prevalecientes, del programa de defensa nacional de Estados Unidos y de la emergencia proclamada por el Presidente", impongan a sus inquilinos contratos injustos, irrazonables y abusivos. La clara intención del legislador fué proteger en su posesión a todo el que ocupa una casa arrendada para vivir en ella con su familia, impidiendo que se le exija la entrega de esa posesión con el propósito de exigirle el pago de un canon de arrendamiento más alto o de arrendar la finca a cualquier otro inquilino que estuviere dispuesto a pagar un canon mayor. La ley excluye expresamente aquellos casos en que el desahucio se basa en la falta de pago del canon estipulado.

Que la ley fué concebida con el solo propósito de hacer frente a la emergencia existente como consecuencia de la actual guerra en que se encuentra envuelta la humanidad

entera, resulta evidente de la disposición contenida en el último párrafo de la sección 1 de la ley, al efecto de que ésta estará en vigor solamente hasta el 30 de junio de 1944.

Durante la pasada Guerra Mundial muchas ciudades, tanto americanas como europeas, se confrontaron con el problema de congestión de viviendas que trajo consigo el rápido aumento de la población debido a la afluencia de trabajadores y otras causas y que fué agravado con la suspensión de las construcciones. A tal extremo llegó la situación agravada por los cánones de arrendamiento que imponían los propietarios de casas de alquiler a sus inquilinos que fué preciso que el estado interviniera para evitar que peligrasen el bienestar, la moral y la salud públicos. Así, casi todas las naciones civilizadas, aprobaron legislación tendente a reglamentar los contratos de alquiler de viviendas. (Véase al efecto 32 Am. Jur. 865, secs. 1035 y 1036; *Block* v. *Hirsh,* (1920) 256 U. S. 135, 155.) En España, entre otras naciones, se aprobó a tal efecto un Real Decreto prorrogando obligatoriamente los contratos de arrendamiento de fincas urbanas en poblaciones de más de 20,000 almas, (R. D. de 21 de junio de 1920, "Enciclopedia Jur. Esp., Apéndice 1920, pág. 71) y en Estados Unidos se aprobaron dos leyes, una del Congreso reglamentando los alquileres en el Distrito de Columbia conocida como la "Ball Rent Law" (Act of October 22, 1919, c. 80, Title II.—"District of Columbia Rents," 41 Stat. 297 et seq.) y la otra de la Legislatura del Estado de Nueva York conocida como la "September Housing Laws" (*People* v. *La Fetra,* (1921) 130 N. E. 601, 603) (cc. 942–953, Laws of New York of 1920, pp. 2477 et seq.) reglamentando los alquileres en las poblaciones de más de 1,000,000 de habitantes y sus alrededores.

En Puerto Rico, desde comienzos de la guerra actual se creó una situación parecida en las condiciones de vivienda, y nuestra Legislatura, se vió precisada a intervenir para poner coto a una situación que amenazaba seriamente la

salud, la moral y el bienestar público y a tal efecto, haciendo uso de su poder de reglamentación (*police power*) aprobó una serie de leyes entre las cuales está la número 14 de 1941, que nos ocupa. Casi todas estas leyes se basaron en las aprobadas por el Congreso y la Legislatura de Nueva York durante la pasada Guerra, a las cuales nos hemos referido anteriormente.

Al redactar la Ley número 14 de 1941, el legislador tomó como modelo los estatutos que con idénticos propósitos aprobaron el Congreso Nacional y la legislatura del estado de New York. La constitucionalidad del primero de dichos estatutos fué sostenida en *Block* v. *Hirsh,* 256 U. S. 135, 65 L.Ed. 865 y la del segundo en *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, 65 L.Ed. 877. Conviene que hagamos un estudio detenido de estas dos decisiones para que podamos darnos cuenta exacta de su aplicabilidad al presente caso.

En el primero de dichos casos, Hirsh entabló demanda para recobrar la posesión del sótano y primer piso de un edificio en Wáshington que Block continuaba ocupando después de haber expirado su contrato de arrendamiento. Hirsh compró el edificio cuando el arrendamiento estaba aún en vigor y notificó a Block requiriéndole para que le entregase la posesión del local en la fecha en que debía expirar el arrendamiento. Negóse Block a entregar el local, invocando la sección 109 de la Ley de octubre 22, 1919, Cap. 80, título 2. "District of Columbia Rents" (41 Stat. at L. 297, 298, 301) que reconoce el derecho del arrendatario a continuar ocupando la propiedad arrendada, no obstante haber expirado el término del arrendamiento, siempre que pague el canon convenido y cumpla las condiciones fijadas en el contrato de arrendamiento. La misma sección dispone que el dueño tendrá derecho a reclamar la posesión del edificio, siempre que lo haga de buena fe y para en realidad ocuparlo él mismo o su esposa, hijos o dependientes, debiendo notificar por escrito al arrendatario, con treinta días de antelación.

Hirsh reclamó la posesión para su propio uso, pero se negó a dar los treinta días de aviso, alegando que el estatuto era anticonstitucional porque le privaba de su propiedad sin el debido procedimiento de ley y no para un uso público. Así lo sostuvo la Corte de Apelaciones del Distrito de Columbia. Y al revocar su decisión, la Corte Suprema Federal, por voz del Juez Sr. Holmes, se expresó así:

"Indudablemente, es cierto que una declaración legislativa de hechos que son materiales solamente como fundamento para la promulgación de una regla de derecho, por ejemplo, que cierto uso es de carácter público, puede no ser considerada como concluyente por las cortes. (Citas.) Pero una declaración hecha por una legislatura con relación a condiciones públicas que, por necesidad y por deber, está obligada a conocer, merece por lo menos gran respeto. En este caso, el Congreso hizo constar un hecho públicamente notorio y de carácter casi mundial. Que la emergencia declarada por el estatuto existía debe ser asumido, y la cuestión es si el Congreso era incompetente para hacerle frente en la forma en que lo han hecho la mayor parte de los países civilizados del mundo.

"La proposición general que debe ser sostenida es que las circunstancias han investido el arrendamiento de edificios en el Distrito de Columbia de un interés público tan grande que justifica su regulación por medio de una ley. Evidentemente, las circunstancias pueden cambiar con el tiempo o diferir en el espacio, hasta el punto de investir con ese interés público aquello que en otros tiempos y en otros sitios sería un asunto de puro interés privado. (Citas.)

". . . Estos casos bastan para establecer la regla de que una necesidad pública justificará el que la legislatura restrinja los derechos de propiedad sobre la tierra, hasta cierto punto sin compensación . . . El Congreso ha hecho constar el indiscutible embarazo del gobierno y el peligro a la salud pública dentro de las condiciones prevalecentes. El espacio en Wáshington está necesariamente monopolizado por unos pocos dueños, y el arrendamiento de partes de ese espacio es un negocio como otro cualquiera. El albergue es necesario para la vida. Están presentes todos los elementos de un interés público que justifican algún grado de control público. La única cuestión que nos parece abierta a discusión es la de si el estatuto va demasiado lejos. . .

". . . El punto principal en contra de la ley es que se le permite a los arrendatarios continuar en posesión por el mismo canon de arrendamiento que han estado pagando, a menos que dicho canon sea modificado por la comisión establecida por la misma ley, y que en esa forma el uso de la tierra y el derecho del dueño a hacer lo que le plazca con su propiedad y a celebrar los contratos que quiera,. quedan suprimidos. Empero, si el interés público ha quedado establecido, la reglamentación de los cánones es la primera forma en que ese interés se hace sentir, y la validez de esa reglamentación ha quedado sentada desde *Munn* v. *Illinois*, 94 U. S. 113, 24 L. ed. 77 . . . . . La reglamentación ha sido aprobada y está justificada solamente como una medida provisional. (Citas.) Una limitación en cuanto al tiempo, para hacer frente a una situación anormal pasajera, puede muy bien justificar una ley que no podría ser sostenida como un cambio permanente.

"La ley provee los medios para garantizar al dueño una renta razonable. Puede asumirse que la interpretación de "razonable" le privará, en parte, por lo menos, de la oportunidad de aprovecharse del repentino influjo de gente en Wáshington, motivado por las necesidades del gobierno y la guerra, y en esa forma de un derecho usualmente incidental a las propiedades favorablemente situadas,—de una parte del valor de su propiedad según se define en *International Harvester Co.*, v. *Kentucky*, 234 U.S. 222, 58 L. ed.. 1887. (Otras citas.) Pero aunque es injusto perseguir con enérgicas denuncias esos beneficios derivados de una desgracia nacional,. la política de limitarlos ha sido englobada en la facultad de imponer contribuciones y ha sido aceptada. Va, si acaso, un poco más. lejos que la restricción impuesta al dueño de dinero por las más debatibles leyes contra la usura. La preferencia que se da al arrendatario en posesión es un incidente casi necesario de la política pública, y es tradicional en la ley inglesa. Si el arrendatario quedase sujeto a la facultad del arrendador para desahuciarlo, los esfuerzos para limitar las exigencias del arrendador fracasarían."

En *Brown Holding Co.* v. *Feldman,* la Corte Suprema Federal sostuvo la validez constitucional del estatuto de Nueva York (Chapters 942 and 947, Laws of New York, 1920), que es idéntico al nuestro, excepto en cuanto dispone, como condición adicional para que el dueño de una casa pueda recuperar la posesión de la misma para usarla como

residencia para él y su familia, que el demandante esté habi-tando una casa que no es de su propiedad ni lo ha sido dentro del año anterior al comienzo de la acción. Nos toca ahora resolver si esa cláusula adicional viola en modo alguno los derechos reconocidos al peticionario Miranda por las citadas disposiciones de nuestra Ley Orgánica.

El propósito evidente del legislador, al adicionar al estatuto de Nueva York la disposición que estamos considerando, fué proteger al arrendatario en posesión, cuyo contrato hubiere terminado por expiración del plazo del arrendamiento o por la negativa del nuevo dueño a reconocerlo, contra cualquier plan o subterfugio a que pudiera recurrir el nuevo dueño del inmueble para hacer ilusoria la protección del estatuto y burlar el propósito fundamental de una ley de carácter provisional aprobada para hacer frente a la situación anormal y de emergencia creada por la actual guerra. Por eso no le bastó al legislador establecer el requisito de que la reclamación de la posesión del inmueble para ser usado como vivienda, sea hecha de buena fe. Fué más allá y exigió como demostración de esa buena fe, que el dueño demandante no esté en el momento de radicar su demanda habitando una casa de su propiedad o que lo fué durante el año anterior a la fecha en que se inició la acción de desahucio.

La Ley número 14 aprobada en 21 de noviembre de 1941 empezó a regir inmediatamente después de su aprobación y estaba por tanto vigente en las fechas en que ocurrieron los hechos que han motivado este procedimiento.

De acuerdo con la certificación expedida por el Registrador de la Propiedad de San Juan ofrecida en evidencia por el demandado Jarabo y erróneamente excluída por la corte inferior, el peticionario Miranda compró en noviembre 19 de 1940 un solar en el Condado y allí edificó una casa recidencial que fué inscrita a su nombre mediante escritura de fecha febrero 20 de 1941. En mayo 11 de 1943, Miranda vendió la casa y solar a Walter Tischer, pero continuó residiendo

en la casa y residía aún en ella en la fecha en que compró la ocupada por Jarabo—junio 7, 1943—y en la fecha en que radicó la demanda de desahucio—agosto 4 de 1943.

No encontramos razón alguna para sostener que como consecuencia del requisito adicional de nuestro estatuto se priva al Sr. Miranda de su propiedad sin el debido procedimiento de ley. En mayo 11 de 1943, estando vigente la ley que analizamos y en toda su plenitud la emergencia que dicha ley trata de conjurar, Miranda era dueño de una casa residencial que ocupaba con su familia. El sabía—o debió saber—que si compraba una casa que estaba ocupada por un arrendatario, éste no podría ser desalojado porque la ley que estamos considerando le concede el derecho a continuar en la posesión de la casa durante el período de la emergencia declarada por la misma ley. Para Miranda no existía problema alguno. El y su familia ocupaban como dueños la casa que ahora ocupan como arrendatarios. Y debemos suponer que si la vendieron fué con el propósito de realizar una ganancia, pues es de general conocimiento que en tiempos de emergencia como el presente el valor de todas las edificaciones aumenta considerablemente. La situación en que ahora se encuentra el peticionario es consecuencia directa de su propio acto. Y no habiéndose cumplido los requisitos que fija el estatuto para que el peticionario pueda, como nuevo dueño de la propiedad, exigir que se le entregue la posesión, no erró la corte inferior al declarar sin lugar la demanda de desahucio. Si la acción de desahucio pudiese prosperar bajo circunstancias como las del presente caso, el propósito fundamental de la ley quedaría burlado y tendríamos que declarar que nuestra legislatura es impotente para remediar una situación de emergencia como la presente.

El tercer error señalado por el recurrente carece, en nuestra opinión, de méritos. En el mismo se circunscribe a afirmar que no existe legalmente el artículo 621 del Código de Enjuiciamiento Civil (Ed. 1933) y que por tal razón no pudo ser enmendado por la Ley número 14 de 1941.

Según el propio recurrente en su alegato (página 27):

"Para el mes de marzo de 1933, la Comisión Conjunta Codificadora tiene ya listo el nuevo Código de Enjuiciamiento Civil y la Legislatura, por la Ley número 6 de 31 de marzo de 1933, dicta las reglas para la impresión del nuevo Código. Dispone la ley, en su parte pertinente, lo que sigue:

" Sección 1.—La Comisión Conjunta Codificadora de la Legislatura de Puerto Rico, queda por la presente autorizada para ajustar a las siguientes reglas, el Código de Enjuiciamiento Civil, ya terminado por dicha Comisión:

" 'Regla 1.—.   .    .    .    .    .    .    .

" 'Regla 2.—.   .    .    .    .    .    .    .

" 'Regla 3.—.   .    .    .    .    .    .    .

" 'Regla 4.—.   .    .    .    .    .    .    .

" 'Regla 5.—La Ley de Procedimientos Legales Especiales aprobada en 1905, con todas sus enmiendas hasta 1932, formará el título XVI del nuevo Código de Enjuiciamiento Civil debiendo renumerar sus artículos para acoplarlos al Código, pero conservando la numeración que tenían en la ley original, y anotándolos con la Jurisprudencia de Puerto Rico desde el tomo 1 al 44 de las Decisiones del Tribunal Supremo. También se hará constar la equivalencia de cada artículo a la Ley de Enjuiciamiento Civil Española.

" 'Regla 6.—.   .    .    .    .    .    .' "

Es cierto que la Legislatura no incluyó expresamente en dichas reglas la Ley de Desahucio de 9 de marzo de 1905, pero fué indudablemente una omisión de la Legislatura. Decimos esto por creer que la Ley número 6 de 1933 (Leyes de 1932-33, pág. 195), lo que hace es autorizar la publicación de un trabajo que ya había terminado la Comisión Codificadora y al efecto establece la ley una serie de reglas de forma, de carácter directivo que deberán observarse al publicar el código. Aún admitiendo que la Ley de Desahucio fuera incluída en el Código ilegalmente por la Comisión Codificadora el hecho cierto es que existe una Ley de Desahucio en Puerto Rico que no ha sido derogada y que la intención de la Legislatura al aprobar la Ley número 14 de 1941 fué enmendar el artículo 2 de dicha ley que aparece en el Código de Enjuiciamiento Civil bajo el artículo 621.

En tercer lugar, si la Comisión no estuvo autorizada por la Legislatura para incluir en el Código la Ley de Desahucio, su actitud fué ratificada implícitamente por la Legislatura al aprobar la Ley número 14 de 1941 enmendatoria del artículo 621 del Código.

*Por las razones expuestas procede declarar sin lugar el recurso y anularse el auto expedido.*