Pedro Cintrón, demandante y apelado, *v.* Corte Municipal de San Juan, Sala Primera, Hon. V. M. Fernández, Juez, demandada; Miguel Martínez, interventor y apelante.

Núm. 9441.—*Sometido:* Noviembre 6, 1947.   *Resuelto:* Noviembre 26, 1947.

*Benigno Dávila,* abogado del apelante; *Carlos D. Vázquez* y *Arnaldo Cabrera,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El demandante, arrendatario de un local destinado a fines comerciales, subarrendó al demandado sobre una base de mes

a mes una parte de dicho local. En la porción subarrendá-dale el demandado explota una joyería. En marzo de 1946 el demandante instituyó pleito de desahucio ante la corte municipal solicitando el lanzamiento del demandado. Después de haber éste radicado su contestación, el 2 de abril de 1946 las partes estipularon que se dictara sentencia a favor del demandante; que el demandado tendría un término de cinco meses contado a partir del 1ro. de abril de 1946 para desalojar el local; que seguiría pagando la misma cantidad que antes pagaba, y que si dejaba de pagarla durante dichos cinco meses, entonces se ordenaría inmediatamente al márshal que lo desahuciara; y que las partes "renuncian expresamente el derecho de apelación y cualquier otro contra la sentencia...". De conformidad con los términos de la estipulación la corte municipal dictó sentencia el 2 de abril de 1946.

El 9 de agosto de 1946 el demandado radicó en la corte municipal una moción solicitando la suspensión de los procedimientos en vista de la sección 12 de la Ley núm. 464, Leyes de Puerto Rico, 1946 ((1) pág. 1327). La corte municipal declaró sin lugar la moción por el fundamento de que el demandado venía obligado por la estipulación. En un recurso de *certiorari*, la corte de distrito dejó sin efecto la resolución de la corte municipal. El demandante ha apelado de esta resolución de la corte de distrito.

El apelante alega en primer lugar que la Ley núm. 464 quedó totalmente suspendida por la Ley Federal de Extensión de Control de Precios de 1946. No hay base para tal contención. El control Federal de alquileres desde 1942 se ha limitado a viviendas. Por tanto, nuestra resolución en el caso de *Latoni* v. *Corte*, 67 D.P.R. 140, no es de aplicación al presente, en que se trata de un local comercial.

Tampoco tiene méritos el segundo error del apelante. Arguye que la Ley núm. 464 no ordena la suspensión de los procedimientos de un arrendatario contra su subarrendatario. Pero la sección 22 define el término *propietario* como

incluyendo al subarrendador, y el término *inquilino* como incluyendo al subarrendatario.

■ En el tercer error el demandante impugna la Ley núm. 464 como inconstitucional al ser aplicada a este caso, por los fundamentos (1) que anula una sentencia dándole efecto retroactivo a la Ley núm. 464 y (2) que menoscaba la obligación de los contratos.

Encontramos la contestación a estos argumentos en el caso de *Fleming* v. *Rhodes,* 331 U.S. 100, 91 L.ed. 998. Toda vez que la Ley de Emergencia sobre Control de Precios de 1942, según enmendada, no estuvo en vigor entre julio 1ro. y julio 25 de 1946, algunos propietarios obtuvieron sentencias estatales para desahuciar inquilinos durante este corto período, sin los certificados exigidos por los reglamentos Federales. Sin embargo, antes de que algunos de estos inquilinos fueran de hecho lanzados, en 25 de julio de 1946 el Congreso aprobó la Ley de Extensión sobre Control de Precios que disponía en su sección 18 que empezaría a regir desde el 30 de junio de 1946 y que todos los reglamentos expedidos bajo la Ley de Emergencia de Control de Precios de 1942, según enmendada, estarían en vigor en la misma forma como si la Ley de 1946 hubiera sido aprobada el 30 de junio de 1946. Véase *Pueblo* v. *Camacho García et al.,* ante, pág. 788.

Entonces el Administrador Federal solicitó *injunctions* ante las cortes de distrito Federales para impedir los lanzamientos basados en estas sentencias estatales. La disposición de la sección 18 al efecto de que la Ley Federal sería efectiva a partir del 30 de junio de 1946, fué impugnada por los propietarios-demandados en estos casos, por ser inconstitucional de aplicarse la misma a sus sentencias estatales (1) porque se ponían estas sentencias estatales retroactivamente bajo la Ley de Extensión y (2) porque los derechos adquiridos creados por las sentencias no podían ser destruídos por legislación posterior.

En el caso de *Fleming* la Corte Suprema sostuvo el derecho del Administrador a obtener tales *injunctions* contra

estos propietarios. La corte respondió a estos dos argumentos constitucionales indicando en cuanto al primero que la restricción sobre desahucios era para el futuro, más bien que retroactiva. En cuanto al segundo punto relacionado con los supuestos derechos adquiridos de los propietarios en sus sentencias, la Corte dijo en 91 L.ed. 1002:

"Es inmaterial el hecho de que las sentencias estatales fueron obtenidas antes o después de la fecha en que entró en vigor la Ley de Extensión. El esfuerzo del apelante es impedir futuros procedimientos de lanzamiento, después de que los propietarios apelados hayan adquirido, mediante sentencias válidas, lo que la corte de distrito caracterizó como 'derechos adquiridos'. La reglamentación Federal de acción futura basada en derechos adquiridos anteriormente por la persona reglamentada no está prohibida por la Constitución. Toda vez que la Constitución autoriza la legislación posteriormente aprobada, el hecho de que sus disposiciones limiten o interfieran con derechos adquiridos anteriormente, no la proscribe. La inmunidad contra reglamentación Federal no se obtiene mediante contratos celebrados en previsión de la misma. Si fuera de otro modo, los poderes supremos del Congreso podrían ser anulados por el 'discernimiento profético.' Los derechos adquiridos en las sentencias no tienen una base diferente. La protección de facilidades de vivienda en las áreas de defensa mediante las leyes de control de precios, pueden llevarse a cabo por el apelante no obstante estas sentencias anteriores. . . ."

Lo mismo que la Ley Federal de 1946, la Ley núm. 464 tiene un carácter prospectivo y no retroactivo, y fué correctamente aplicada en este caso para prohibir futuras órdenes de lanzamiento, y no a las sentencias ya dictadas. Y, según lo hace constar claramente el caso de *Fleming,* una sentencia—ya sea resultado de un pleito o de un "contrato"—nó puede operar en el sentido de impedir legislación que regule actuaciones futuras, v.g., lanzamientos que todavía no se han ejecutado.

En su cuarto señalamiento el apelante alega que el demandado está impedido de solicitar la suspensión de los procedimientos por razón de su estipulación allanándose a

la sentencia y renunciando el derecho de apelación y cualquier otro que pudiera tener contra la sentencia. Pero, bajo estas circunstancias, una sentencia por estipulación o consentimiento no es diferente a una dictada después de larga litigación. El allanamiento a que se dicte sentencia meramente obvia la necesidad de prueba. Y la parte perdidosa está impedida de negar solamente lo que la sentencia tiene por miras establecer como los hechos y la ley del caso según existían en dicha fecha. Véanse *Myers* v. *Myers*, 100 S.W.2d 693 (Ky., 1936); *Keach* v. *Keach*, 290 S.W. 708 (Ky., 1927); *Snyder* v. *Schmoyer*, 104 P.2d 612 (Colo., 1940); *Smith* v. *Smith*, 173 S.W.2d 813 (Ky., 1943); *Sidelinker* v. *York Shore Water Co.*, 105 A. 122 (Me., 1918); 3 Freeman *on Judgments* (5ta. ed.) sec. 1350, págs. 2773–74.

■■ No nos detenemos a determinar el efecto de la Ley núm. 464 sobre una sentencia por consentimiento dictada después de entrar en vigor la Ley. Aquí el subarrendatario consintió en que se dictara sentencia en su contra con anterioridad al día en que la Ley núm. 464 entró en vigor para edificios comerciales. Si dicha sentencia hubiese sido el producto de un caso contencioso, a tenor con las expresas disposiciones de la sección 12 suspendiendo todos los procedimientos de desahucio que no se ajustasen a las condiciones y términos de la Ley núm. 464, no podía expedirse una orden posterior de lanzamiento dirigida al márshal de conformidad con dicha sentencia. Esta sentencia por consentimiento no es mejor que la otra. En ambos casos el procedimiento aún no se ha terminado si el lanzamiento no se ha ordenado y efectuado. Véase *Kimmelman* v. *Tenenbaum*, 50 N.Y.S.2d 912, 915 (1944).

La sección 12 no destruye o menoscaba ninguna de las dos clases de sentencias, las que continúan en vigor. Provee en sustancia que no se tomará paso futuro alguno, incluyendo una orden de lanzamiento, en cualquier procedimiento de desahucio, a no ser que la demanda se ajuste o se haga ajustar a las condiciones y términos de la Ley núm. 464. Por tanto, la corte municipal estaba obligada bajo la sección 12

a suspender los procedimientos, no obstante la sentencia por consentimiento, cuando el demandado lo solicitó el 9 de agosto de 1946, después de entrar en vigor la Ley núm. 464 y antes de que se expidiera y ejecutara una orden de lanzamiento.

El demandante alega como parte de su cuarto señalamiento que la Legislatura tuvo por miras que la sección 12 fuera aplicable solamente a casos futuros y no a los pendientes. El lenguaje de la sección 12 claramente demuestra que fué la intención que se aplicara a procedimientos pendientes.

También sostiene el demandante, todavía como parte del cuarto señalamiento, que la Legislatura no contempló que la sección 12 se aplicaría a casos en que ya se había dictado sentencia. Pero nada hay en la sección 12 que exima tales casos de sus términos. Su lenguaje es más bien absoluto. Los procedimientos en todos los casos, no importa en qué estado, serán suspendidos. *Font* v. *Echeandía,* 67 D.P.R. 244.

El demandante levanta varias cuestiones en su quinto señalamiento de error. El único punto que creemos necesario examinar aquí es su argumento de que la sección 12 confirió discreción a las cortes para suspender o negarse a suspender este procedimiento, y que la corte de distrito abusó de su discreción al ordenar la suspensión. Nada encontramos en la sección 12 en apoyo de esta contención. Siempre y cuando que un caso caiga dentro de sus términos, dicha sección exige la suspensión de los procedimientos, y nada deja a la discreción de la corte. Véase *Font* v. *Echeandía,* supra.

En su sexto error, el demandante renueva su ataque a la constitucionalidad de la Ley núm. 464 al aplicarse ésta a edificios comerciales. Sus argumentos no son ahora, como en el tercer error, que la Ley es nula al aplicársele a él, debido a su alegado efecto retroactivo y debido también al derecho adquirido que obtuvo en la sentencia. Aquí impugna la ley en su efecto prospectivo. Es difícil desentrañar los argumentos legales del lenguaje insultante que lanza el de-

mandado a esta legislación. Pero las contenciones del demandante aparentemente son al efecto de que la ley le priva de su propiedad sin el debido procedimiento de ley y que le niega la igual protección de las leyes.

Una considerable porción del alegato del demandante sobre este punto se emplea en la contención de que la Ley núm. 464 es inconstitucional en tanto en cuanto la sección 12($f$) limita el derecho de un propietario a desahuciar a un inquilino que no tenga arrendamiento por término fijo de las facilidades de vivienda con el fin de él ocuparlas o de dejarlas deshabitadas. *Cf. Latoni* v. *Corte,* 67 D.P.R. 140, 149, escolio 1. Dicho argumento no es de aplicación a este caso, que envuelve una propiedad comercial.

■ El demandante también impugna la Ley núm. 464 por inconstitucional porque no provee, según él, que el dueño de un edificio comercial puede recobrar para uso propio la posesión de un inquilino de mes a mes. Tampoco aquí el demandante, quien es un subarrendador, tiene capacidad para levantar esta cuestión contra el demandado, su subarrendatario.

■ En cuanto al punto de que la Ley núm. 464 priva al demandante de su propiedad sin el debido procedimiento de ley, no se ha citado caso alguno que envuelva un estatuto sobre control de alquileres para edificios comerciales. Sin embargo, no tenemos duda de que la Legislatura puede, bajo condiciones de guerra y postguerra, cuando los precios suben indebidamente y los materiales de construcción escasean, hacer uso del poder de policía para restringir los desahucios tanto de las viviendas como de los edificios comerciales, siempre y cuando que también disponga el pago de cánones razonables y equitativos. Véase *Latoni* v. *Corte,* supra, pág. 151–52.

En su "Exposición de Motivos" contenida en la Ley núm. 464 la Legislatura declara que debido a que los edificios que se usan para negocios y propósitos comerciales no están suje-

tos a las disposiciones sobre inquilinato de la Ley de Emergencia para el Control de Precios de 1942 y ''a la gran demanda de edificios para usos comerciales . . . numerosos propietarios han estado . . . imponiendo a sus arrendatarios contratos . . . irrazonables; han aumentado las rentas hasta sumas que en algunos casos exceden del doscientos (200) por ciento del canon original y están recurriendo a diversas prácticas de especulación y de violento desalojo de negocios e industrias de importancia económica para el país. Estas prácticas de agiotaje menoscaban la libertad de contratación, imponen costes injustificados a la industria y al comercio con el consiguiente perjuicio para el público consumidor, destruyen el crédito (*good will*) de las empresas, causan daño a la economía de la Isla y afectan al bienestar, la salud y la seguridad del pueblo.''

Está fuera de toda discusión el hecho de que el control de alquileres en un período de emergencia es válido. *Bowles* v. *Willingham,* 321 U.S. 503; *Fleming* v. *Rhodes,* supra; *Miranda* v. *Corte,* 63 D.P.R. 161. Y quizá se podría plausiblemente argumentar que una reglamentación similar de edificios comerciales es necesaria como un incidente al control sobre viviendas, para evitar se conviertan las propiedades de viviendas en propiedades para usos comerciales. De cualquier modo, el control de los alquileres de edificios comerciales, bajo las circunstancias prevalecientes en Puerto Rico cuando la Ley núm. 464 se aprobó, es un válido ejercicio del poder de policía independientemente del control de alquileres de viviendas.

Estamos en medio de una emergencia postguerra. Hay escasez de materiales de construcción, existe una gran necesidad de edificios comerciales y la inflación amenaza por todas partes. Estas condiciones justifican que se apruebe legislación para impedir aumentos irrazonables en los cánones de edificios comerciales e impedir lanzamientos ilimitados de los mismos. En verdad, si tales prácticas inflacionarias perma-

necieran sin fiscalizar, el público consumidor las sentiría más agudamente que el cobro de un canon excesivo o el lanzamiento de un individuo particular de una sola vivienda. Esto es así porque los comerciantes, obligados a pagar cánones opresivos, en seguida les pasarían al público el pago de los mismos.

█ El demandante ataca fuertemente la sabiduría de la Ley núm. 464. Ésta es una cuestión que atañe a la Legislatura y no a los tribunales. *Gobierno de la Capital* v. *Consejo Ejecutivo*, 63 D.P.R. 434, 448-49.

*La resolución de la corte de distrito será confirmada.*