Victor Rivera Santiago, demandante y apelante, *v.* R. Cobián Chinea & Co., Inc., demandada y apelada.

Núm. 9783.—*Sometido:* Noviembre 10, 1948. *Resuelto:* Marzo 18, 1949.

*Francisco Ponsa Feliú, Philip F. Herrick, Pascual Amado Rivera y José C. Jusino,* abogados del apelante; *Vicente Géigel Polanco,* abogado de la apelada.

El Juez Presidente Señor De Jesús emitió la opinión del tribunal.

El demandante adquirió por compra un edificio de dos plantas ubicado en Bayamón. La demandada tiene en su planta baja un establecimiento comercial a virtud de contrato de arrendamiento celebrado con el dueño anterior, sin término fijo, por canon de $125 mensuales. El demandante asumió el contrato, pero el 9 de febrero del año pasado noti-

ficó por escrito a la demandada su determinación de finalizarlo el 29 de aquel mes. Como la demandada rehusara desocupar el local, el demandante, el 11 del mes siguiente, instó este pleito de desahucio. La única causal que alegó fué el hallarse en la necesidad de recobrar el local para abrir allí un establecimiento comercial de su propiedad.

El 19 de marzo de 1948 la demandada excepcionó y contestó la demanda. Predicó la excepción previa en que la Ley de Alquileres Razonables aprobada el 25 de abril de 1946 (pág. 1327) que fué puesta en vigor el 17 de julio de 1947, a virtud de la resolución del Consejo Ejecutivo declarando que existía la emergencia, es aplicable lo mismo a locales dedicados a viviendas que a los utilizados para fines comerciales o industriales;[1] que la referida ley congela los contratos de arrendamiento de los edificios destinados a fines comerciales[2] y los prorroga durante la emergencia a que la misma se refiere, mientras el inquilino pague el canon estipulado; que la persona que adquiere una propiedad arrendada queda sujeta a las disposiciones de dicha ley y no puede reclamar otros derechos que los que en la misma se establecen a favor del propietario original;[3] y finalmente, que la causa alegada por el demandante no está comprendida en las disposiciones del artículo 12 de la referida ley.

La excepción previa fué declarada con lugar y en consecuencia se desestimó la demanda.

 El demandante apeló. Admite que la casual alegada no está comprendida en la Ley de Alquileres Razonables; acepta que la Legislatura de Puerto Rico tiene facultades para reglamentar alquileres, fijar rentas máximas y limitar los procedimientos de desahucio, siendo dichas facultades una consecuencia de su poder de reglamentación (*police power*); concede que mediante el ejercicio de ese poder, la

---

[1] Artículo 4(*a*) de la Ley núm. 464 de 1946, según fué enmendado por la núm. 395 de 1947, pág. 757.

[2] Artículo 12 de la misma Ley núm. 464.

[3] Artículo 15 de la misma Ley núm. 464.

Legislatura puede limitar y menoscabar el derecho de propiedad en beneficio del bienestar público; que el control y limitación de los desahucios es, bajo ciertas circunstancias, un incidente necesario al control de rentas máximas y por último, que la Legislatura puede reglamentar rentas y desahucios de edificios dedicados a fines comerciales de igual modo que si se tratase de locales usados para vivienda.

Sostiene, sin embargo, el apelante, que el poder de reglamentación no llega al extremo de prohibir al propietario que recurra a la acción de desahucio cuando su intención *bona fide* sea recobrar la posesión del edificio o local para usarlo en un negocio de su propiedad o para establecer allí su domicilio; que el privar al propietario de ese derecho es inconstitucional: (1) porque le priva de su propiedad sin el debido proceso de ley; (2) porque no constituye un ejercicio válido del poder de reglamentación; y (3) porque equivale a privarlo de su propiedad sin justa compensación.

El apelante invoca, por analogía, entre otros, los casos de *Wilson* v. *Brown,* 137 F.2d 348 (E.C.A., 1943) y el de *Taylor* v. *Bowles,* 145 F.2d 833 (E.C.A., 1944), los cuales interpretan la Ley de Emergencia de Control de Precios que sólo se aplica a alquileres de locales para viviendas. Esa ley federal expresamente reconoce al dueño el derecho de desahuciar al inquilino cuando de buena fe solicite la posesión para ocupar el local como su propio domicilio o el de su familia. Pone gran énfasis el apelante en que en el caso de *Taylor* v. *Bowles,* supra, al igual que en el más reciente de *Woods* v. *Durr,* 170 F.2d 976 (C.C.A. 3, 1948), *certiorari* expedido 17 L.W. 3246, se dice que probablemente esa disposición de la ley federal fué puesta para evitar posibles dificultades constitucionales. Naturalmente, las cortes federales no han podido resolver que en ausencia de esa disposición, la ley sería inconstitucional. Pero en la hipótesis de que la congelación en caso de locales para viviendas, aun cuando el dueño reclamase su posesión para utilizarlos como

su residencia, fuese inconstitucional, ¿implicaría acaso que la situación es la misma cuando de un local dedicado a fines comerciales o industriales se trata? Ya en *Cintrón v. Corte Municipal,* 67 D.P.R. 793, se alegó la inconstitucionalidad de la Ley núm. 464 por no proveer, según el demandante, que el dueño de un edificio comercial podía recobrarlo de un inquilino de mes a mes, cuando de buena fe es su propósito usarlo en un negocio de su pertenencia. No pudo resolverse entonces la cuestión porque en aquel caso el demandante no era dueño sino un subarrendador y por esa razón carecía de capacidad para levantar el punto. En el presente caso, el apelante es dueño del edificio y por lo tanto, tiene capacidad para impugnar la constitucionalidad de la ley.

Dadas las admisiones que hace el apelante en su alegato, nos sentimos relevados de recurrir a la Exposición de Motivos de la Ley núm. 464 en busca de luz sobre las razones que motivaron a la Legislatura para legislar sobre alquileres de edificios o locales destinados a usos comerciales. Véase *Cintrón v. Corte Municipal,* supra, pág. 801. En tales condiciones, podemos concentrar la discusión al hecho de si por tratarse de que el demandante es dueño del local y trata de recobrarlo para abrir en él un negocio de su propiedad, la ley que esto impide es inconstitucional.

Nos parece que no puede alegarse seriamente que el efecto de la Ley núm. 464 es privar al apelante de su propiedad sin justa compensación, pues sólo le priva del uso de la misma, transitoriamente, es decir, durante la emergencia causada por la postguerra, y mientras tanto, está recibiendo un canon de $125 mensuales que fué el que la apelada convino con el dueño anterior y aceptó el apelante al comprar el edificio y asumir el contrato preexistente. Como dijera el Juez Holmes en *Block v. Hirsh* (1921) 256 U.S. 135, 157: "una medida transitoria para hacer frente a una dificultad pasajera, bien puede justificar una ley que no podría ser sostenida si tuviese carácter permanente."

Eliminado este alegado motivo de inconstitucionalidad, las otras dos cuestiones quedan reducidas a resolver si dentro de las circunstancias · de este caso, la Legislatura actuó dentro de su poder de reglamentación. El caso de *Nebbia* v. *New York*, 291 U. S. 502 (1934) 78 L. ed. 940, nos da la pauta para determinar las condiciones en que el uso del poder de reglamentación constituiría una injustificada intervención con los derechos del propietario. Se dice en dicho caso:

"El control de precios como cualquiera otra forma de reglamentación es inconstitucional, únicamente si fuese arbitraria, discriminatoria o irrelevante a la norma que la Legislatura tiene derecho a adoptar y por lo tanto constituye una intervención innecesaria o injustificada en la libertad individual."

Ya hemos visto que el apelante concede que la Legislatura tiene facultades dentro del poder de reglamentación para reglamentar el uso de locales para fines comerciales e industriales mientras prevalezca la actual emergencia. Por consiguiente, debemos determinar si las disposiciones del referido artículo 12 constituyen una intervención innecesaria, arbitraria o injustificada con la libertad individual del dueño del local. A este efecto, no debemos perder de vista que el concepto moderno del derecho de propiedad dista mucho del que conocieron los autores de la Constitución. Hoy nadie califica de "sagrado" el derecho a la propiedad como ocurría frecuentemente en el pasado siglo. Hoy la propiedad tiene una función social que es la de servir a la sociedad y no exclusivamente a su dueño. Como muy bien dice la apelada en su alegato: "El nuevo concepto de la propiedad señala a ésta una función eminentemente social, que está tan lejana de aquella cerrada definición del Derecho Romano, que definía la propiedad como 'el derecho de usar y de abusar de las cosas, tanto como lo permita la razón del derecho'. En el nuevo concepto el privilegio individual queda supeditado al interés social."

Si diéramos a la ley la interpretación que propone el apelante, serían numerosos los serios trastornos que se causarían a los negocios en marcha, si a pesar de la escasez de locales comerciales causados por la emergencia de la postguerra, se permitiera el desahucio en condiciones como las prevalecientes en el presente caso. Ello traería el incalificable abuso de que cuando se deseara eliminar un competidor, fácilmente se conseguiría comprando el edificio ocupado por éste e iniciando inmediatamente acción de desahucio so pretexto de retirar el local del mercado de alquileres o de establecer en el mismo un negocio de su propiedad.(⁴) Pero aunque el demandante no fuera un competidor, y no tuviese otro local donde establecerse, se destruiría la estabilidad en los negocios existentes y se expondría al dueño de los mismos a que en cualquier momento, ante la imposibilidad de encontrar un local donde trasladarse, se viese obligado a vender sus existencias a cualquier precio y destruir su negocio bajo la presión de la acción de desahucio establecida por el dueño del edificio. Es éste, precisamente, el mal social que

---

(⁴)No hemos perdido de vista que el artículo 12(A) de la Ley de Alquileres Razonables fué enmendado por la Ley núm. 201 de 14 de mayo de 1948 (pág. 575) en el sentido de que para que exista causa de acción en casos como el presente, precisa el concurso de las siguientes condiciones:

"*a*. Que el arrendador haya adquirido la propiedad con anterioridad al 17 de julio de 1947, fecha de vigencia de la Ley de Alquileres Razonables en cuanto a locales comerciales y de negocio, y que el local hubiera estado arrendado por plazo fijo y ya hubiera vencido el término del arrendamiento.

"*b*. Que el arrendador no tenga establecido en la misma localidad, en edificio propio o ajeno, un negocio de naturaleza igual o parecida al que tenga el inquilino.

"*c*. Que el arrendador interese el local para ocuparlo personalmente con negocio de su exclusiva pertenencia.

"*d*. El mero hecho de que el arrendador desea o necesite la ampliación de su negocio no será causa bastante para justificar la necesidad en que se halla de ocupar el local que hubiere dado en arriendo."

Pero esa enmienda fué aprobada después de dictada la sentencia en este caso y apelada para ante este Tribunal. El apelante no pretende que dicha enmienda sea aplicable al presente caso y el hecho de que el legislador haya restringido la acción no implica que la ley antes de esa enmienda fuera inconstitucional.

la legislación impugnada procura evitar. Parece razonable que en circunstancias tales, el derecho del propietario quede supeditado al interés social.

■ Consideradas las circunstancias de este caso, no vemos cómo pueda sostenerse que el artículo 12 de la Ley 464 sea una intervención innecesaria e injustificada con el derecho de propiedad. No debemos olvidar que toda ley se presume constitucional y que para resolver lo contrario, necesitaríamos estar fuertemente convencidos de su inconstitucionalidad. No erró, pues, la corte inferior al declarar con lugar la excepción previa.

*Procede la confirmación de la sentencia.*

El Juez Asociado Sr. Negrón Fernández no intervino.

Opinión disidente emitida por el Juez Asociado Sr. Todd, Jr.

Disiento. En mi opinión el poder de reglamentación (*police power*) de la Legislatura no puede llegar al extremo, aun en un período de emergencia, de obligar al dueño de una propiedad a mantenerle en el mercado de alquiler, bien sea éste para vivienda o para fines comerciales.

En el caso de *Latoni v. Corte Municipal,* 67 D.P.R. 140, nota (1), pág. 149, por no ser necesario dejamos de resolver si la disposición de la sección 12(*f*) de la Ley 464 de 1946 conocida como Ley de Alquileres Razonables, de que un arrendador que "habitualmente" ha alquilado una propiedad debe continuar alquilándola es válida, aunque dijimos que "puede ser de dudosa constitucionalidad" y agregamos:

". . . El Congreso con gran cuidado dispuso lo contrario en la Ley Federal. Dijo en la sección 4(*d*): 'Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo o a ofrecer cualquier alojamiento en alquiler.' 50 U.S.C.A., App., sección 904(*d*). Como hemos visto el Reglamento Federal 6(*a*)(6) instrumenta esta renuncia. La Corte de Apelaciones de Emergencia resolvió por tanto que un arrendador no puede ser obligado a continuar alquilando su propiedad; puede

desahuciar a un inquilino para vivir él mismo la casa o para dejarla deshabitada. Al así resolver la corte manifestó que 'Quizás [la sección 4(d)] . . . fué incluída en la Ley para evitar dificultades constitucionales.' *Taylor* v. *Bowles,* 145 F.2d 833, 34 (E.C.A., 1944); *Taylor* v. *Porter,* 156 F.2d 805, 810 (E.C.A., 1946). *Cf. Bowles* v. *Willingham,* 321 U.S. 503, 517; *Yakus* v. *United States,* 321 U.S. 414, 431, 437–38; *Wilson* v. *Brown,* 137 F.2d 348, 351–52 (E.C.A., 1943); *Block* v. *Hirsh,* 256 U.S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U.S. 170; *Levy Leasing Co.* v. *Siegel,* 258 U.S. 242; *Miranda* v. *Corte,* 63 D.P.R. 161; *Ex parte Irizarry,* 66 D.P.R. 672; *Roig* v. *People of Puerto Rico,* 147 F.2d 87 (C.C.A. 1, 1945).''

Estoy convencido, después de estudiar los casos citados en la nota del de *Latoni,* que bien se trate de casos de viviendas o de casas dedicadas al comercio, el propietario tiene derecho a retirarlas del mercado de alquiler y a utilizarlas en su propio beneficio o perjuicio. El hecho de que la Legislatura haya reconocido parcialmente ese derecho en cuanto al caso de casas de viviendas(¹) no implica que pueda privar del mismo a los dueños que deseen utilizar su propiedad para establecer en ella, no su residencia, sino un establecimiento comercial. No se trata de un conflicto entre el concepto moderno del derecho de propiedad y el que conocieron los autores de la Constitución. La reglamentación moderna del derecho de propiedad, especialmente en una emergencia, seguramente no hubiera sido sancionada en otros tiempos pasados. Pero una cosa es reglamentar, fijar precios máximos, etc. y otra es prohibir que el dueño de una propiedad de buena fe, pueda retirarla del mercado de alquiler para él vivirla o para él explotar un comercio en ella. Eso ya no es reglamentar, es privarle del uso y disfrute de su propiedad sin el debido procedimiento de ley y obligarlo a dedicarse al

---

(¹) Y también en cuanto a la venta de artículos de primera necesidad, de acuerdo con el artículo 10(*b*) de la Ley núm. 228 de 1942 ((1) pág. 1269), creadora do la Administración General de Suministros, que dispone, en parte, que:

''. . . Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender artículos de primera necesidad. . .''

Véase *Ex parte Irizarry,* 66 D.P.R. 672.

negocio de alquileres al cual él no quiere dedicarse. Esa reglamentación, a mi juicio, es "arbitraria, discriminatoria o irrelevante", como se dice en el caso de *Nebbia* v. *New York*, 291 U.S. 502, 539, a la norma que la Legislatura tiene derecho a adoptar en cuanto al uso y disfrute de la propiedad privada. Además, el caso de *Nebbia* era uno interpretando la ley sobre reglamentación de precios en relación con la venta de leche en New York; ley que, desde luego, no imponía la obligación a nadie a dedicarse a dicho negocio y por tanto, dicho caso no es autoridad para sostener la conclusión de la corte en el presente. Tampoco lo es el de *Block* v. *Hirsh*, 256 U.S. 135, 154, pues el estatuto interpretado en éste expresamente autorizaba al dueño a recuperar la posesión de su propiedad ". . . .para la inmediata y bona fide ocupación por él mismo, o su esposa, hijos o dependientes. . . .al dar treinta días de aviso por escrito", y Hirsh no dió tal aviso sino que solicitó la propiedad para su uso y al no serle entregada atacó toda la ley—que era una de control de alquileres durante dos años— de inconstitucional y el Tribunal Supremo sostuvo la constitucionalidad de la ley, como medida de emergencia.

En el caso de *Yakus* v. *United States,* supra, al referirse a la sección 4(*d*) de la Ley de Control de Precios que dispone que:

". . . Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo de comercio o a ofrecer cualquier alojamiento en alquiler. . ."

la corte dijo:

". . . Los peticionarios no estaban por lo tanto obligados por la ley, *ni hasta donde aparece por ninguna otra regla de ley,* a continuar vendiendo carne al por mayor si no podían hacerlo, sin pérdida. . . ." (Bastardillas nuestras.)

No conocemos regla alguna de ley que pueda sostener la conclusión de la corte en el presente caso. En el de *Buckeye* v. *Boles,* 141 F.2d 692, 696, citado en el de *Ex parte Irizarry,*

supra, la corporación demandante que se dedicaba al alquiler de sitios para estacionar automóviles, al serle denegado por el Administrador un cambio en las tarifas por horas que cobraba, alegó que dicho rechazo equivalía a obligarle a vender su servicio por una hora y que esto constituiría una violación de la ley. La Corte Apelativa de Emergencia dijo:

". . . La contestación a esta contención es obviamente que el Administrador no está interviniendo con el derecho de la demandante de descontinuar su servicio por una hora. *Ella puede descontinuar ese servicio si lo desea,* pero no puede iniciar un programa que tendrá el efecto de aumentar la tarifa mínima." (Bastardillas nuestras.)

En el caso de *Taylor* v. *Bowles,* supra, la misma corte se expresó así:

". . . . . .

"La posición legal asumida por el Administrador Regional parece ser que, bajo la sección 4(d) de la ley, el Administrador no está obligado a permitir que se retiren las casas arrendadas del mercado de alquiler, a menos que el dueño tenga la intención de cesar sus operaciones de alquiler permanente e incondicionalmente. La sección 4(d) no puede ser leída tan restrictivamente. Así como el dueño de un artículo de comercio puede retirarlo del mercado de momento, esperando que el precio máximo sea más tarde aumentado, *así un casero puede retirar sus alojamientos de alquiler del mercado porque no esté conforme con las rentas máximas existentes.* Es bien cierto que el programa de control de alquileres sería expuesto al fracaso (*jeopardized*) si los caseros en general se declararan en tal huelga. Pero el Congreso, al hacer esta concesión (*leeway*) al casero ocasionalmente obstinado que resiente la interferencia gubernamental con lo que, en un mercado no regulado, sería una 'mina de oro', ha evidentemente concluído, con buena razón, que la eventualidad de tal huelga general no debe anticiparse, especialmente donde la reglamentación de rentas es 'generalmente justa y equitativa.'" (Bastardillas nuestras.)

En el reciente caso de *Woods* v. *Durr,* 170 F.2d 976, 979, (C.C.A. 3, 1948), se afirma que:

". . . . . .

"Parece razonablemente claro que la sección 4(d) se incluyó en la Ley de Emergencia Sobre Control de Precios para evitar posibles

dificultades constitucionales. En *Bowles* v. *Willingham*, 1944, 321 U.S. 503, a la página 517, 64 S.Ct. 641, 648, 88 L.Ed. 892, la Corte Suprema, al sostener la constitucionalidad de las disposiciones sobre control de rentas de la Ley de Emergencia Sobre Control de Precios de 1942 contra el ataque basado en que constituían una expropiación (*taking*) de propiedad privada para uso público sin justa compensación, dijo: 'No tenemos aquí una situación que envuelva una expropiación (*taking*) de propiedad. *Wilson* v. *Brown*, supra. [La sección 4(*d*) se copia] No hay ninguna obligación impuesta de que los apartamientos en cuestión sean usados para fines que los hagan caer bajo la Ley.'

"Y al mismo efecto véase *Wilson* v. *Brown*, Em. App. 1943, 137 F.2d 348."

No creo que la interpretación que doy a la ley pueda causar trastornos a los negocios en marcha pues no acepto que sea fácil y corriente que se puedan adquirir por compra tantos edificios ocupados por competidores para retirarlos del mercado de alquileres o para los adquirentes establecer sus negocios en ellos. Como se dice en el caso de *Woods* v. *Durr*, supra, pág. 980, el propósito de la Ley de Viviendas y Alquileres de 1947:

". . . no fué, como sostenía el demandante, 'preservar la continuidad de posesión por los inquilinos debido a la "escasez de viviendas."' Por el contrario la historia y el lenguaje de la ley, así como los de la Ley de Emergencia Sobre Control de Precios de 1942 a la cual sucedió, hace claro que su propósito era controlar la inflación en los alquileres y no el proteger a los arrendatarios en su posesión. El control de los desahucios no fué incluído en la ley como un fin en sí, sino para evitar la estratagema y evasión de los alquileres máximos que era el fin primario de la ley a imponer. Véase la discusión del Juez Magruder de este punto en *Taylor* v. *Bowles*, Em. App. 1944, 145 F.2d 833, 834. Aun cuando el Congreso sí trató, por otra legislación, enfrentar el déficit de alojamiento durante la guerra, es obvio que el 'congelar' (*freezing*) a los inquilinos en posesión de alojamiento existentes no podía resolver ese problema. . . ." (Últimas comillas simples nuestras.)

Estamos ante un caso que fué resuelto a virtud de una excepción previa y, por tanto, hay que aceptar como ciertas las

alegaciones de la demanda de que la acción se ha promovido con el fin alegado de buena fe. En tanto en cuanto el artículo 12 de la Ley 464 de 1946 ((1) pág. 1327) prohibe esta acción lo considero nulo e inconstitucional.

Debe revocarse la sentencia y devolverse el caso para ulteriores procedimientos.